**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JERRY LOWERY,
Plaintiff-Appellant,

v.

LARRY STOVALL; T. E. REDD,
Defendants-Appellees,

and

CITY OF SOUTH BOSTON, VIRGINIA;
J. V. SIMMONS, Individually and in
his official capacity as a police
officer,
Defendants.

No. 95-1729

Appeal from the United States District Court
for the Western District of Virginia, at Danville.
Jackson L. Kiser, Chief District Judge.
(CA-92-4-D)

Argued: February 2, 1996

Decided: August 6, 1996

Before HALL and HAMILTON, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by published opinion. Judge Hamilton wrote the opinion, in
which Judge Hall and Senior Judge Phillips joined.

_____

**COUNSEL**

**ARGUED:** G. Rodney Sager, ROD SAGER & ASSOCIATES, Rich-
mond, Virginia, for Appellant. John Henry O'Brion, Jr., COWAN &

OWEN, P.C., Richmond, Virginia, for Appellees. **ON BRIEF:**
Carey M. Friedman, Gavin T. Pinchback, Third-Year Law Student,
T.C. Williams School of Law, ROD SAGER & ASSOCIATES, Rich-
mond, Virginia, for Appellant.

_____

**OPINION**

HAMILTON, Circuit Judge:

Jerry Lowery appeals the district court's grant of summary judg-
ment in favor of Thomas Redd and Larry Stovall on his claims that
Redd and Stovall subjected him to an unreasonable seizure in viola-
tion of his Fourth Amendment rights. See 42 U.S.C. §§ 1983 & 1985.
For the reasons discussed below, we affirm.

I

This action arises out of an early morning traffic stop on February
1, 1991. Redd, a police officer for the City of South Boston, Virginia
(South Boston), was on routine patrol when he noticed a car driving
with its headlights off through the lot of a construction company.
Redd followed the car and called in the car's license plate number to
the dispatcher's office. Redd subsequently learned that the registered
owner's license had been suspended. At approximately 1:45 or 1:50
in the morning, Redd spotted the car again and proceeded to stop the
car, believing that the driver was driving with a suspended license.
Stovall, another officer with South Boston, arrived shortly after Redd
stopped the car to provide back-up. During the stop, the driver, who
was Lowery, accompanied Redd to the patrol car and sat in the front
passenger seat while Redd called the dispatcher's office to find out
why his license had been suspended. At this point, the parties' ver-
sions of the events in question diverge.

According to Lowery, he got out of the patrol car to show Redd
what he had in his pants pockets. Then Stovall, who had been in the
back seat of Redd's patrol car, got out of the patrol car and, for no
reason, shot Lowery in the head. Lowery then claims that, as he
attempted to get back in the patrol car to lay his head on the seat, he
scratched Redd on the face with his fingernails.

2

The officers, however, present a dramatically different version of the incident. According to Redd and Stovall, while Redd was in the process of writing Lowery a ticket for driving with a suspended license, Lowery began going through his left pants pocket. At this point, Redd asked Lowery what he had in his pocket and then reached over to pat down Lowery's pocket. Lowery then reached into his pants pocket, pulled out an object, pushed Redd against the driver's side door, and used the object to cut Redd on the face. Because Redd felt a burning sensation, he "yelled out knife." (J.A. 1420). Stovall, who had been sitting in the back of the patrol car and saw that Redd was bleeding, attempted to stop Lowery by grabbing him and punching him in the back of his neck. Stovall's attempts to restrain Lowery failed, but Stovall's actions caught Lowery's attention because Lowery then started to climb over the patrol car's front seat in an attempt to attack Stovall. Lowery swung at Stovall in an attempt to cut him with the object, but Stovall fended off this attack by catching Lowery's arm. Stovall then drew his firearm and shot Lowery. Although Stovall tried to shoot Lowery in the shoulder, he shot Lowery in the head when Lowery ducked as Stovall fired. The object that Lowery used to cut Redd, rather than a knife, turned out to be a black magnetic key holder that was approximately three inches long and one inch wide.

After the shooting, Virginia charged Lowery with maliciously causing bodily injury to Redd with the intent to maim, disfigure, disable or kill him in violation of Va. Code § 18.2-51.1.[1] Prosecution on this charge was delayed because Lowery was initially deemed incompetent to stand trial due to his injuries.

---

**1** Section 18.2-51.1 in pertinent part states

> <u>Malicious bodily injury to law-enforcement officers; penalty; lesser included offense.</u> -- If any person maliciously causes bodily injury to another by any means including the means set out in § 18.2-52, with intent to maim, disfigure, disable or kill, and knowing or having reason to know that such other person is a law-enforcement officer . . . engaged in the performance of his public duties as a law-enforcement officer, such person shall be guilty of a Class 3 felony. . . .

Lowery subsequently commenced this § 1983 action against Redd and Stovall[2] alleging that they had violated his constitutional rights. Specifically, Lowery's complaint alleged that Stovall's use of force violated his Fourth Amendment right to be free from unreasonable seizures, which is applied to the states through the Fourteenth Amendment. Lowery's complaint also alleged that Redd owed him a duty to protect him from Stovall's use of excessive force and that Redd breached this duty. The defendants subsequently moved for summary judgment. The district court, finding no evidence that either South Boston or its police chief was deliberately indifferent to Lowery's constitutional rights, granted summary judgment in favor of them. The district court, however, denied Redd's and Stovall's motion for summary judgment because (1) Redd had not yet been deposed and (2) Rainey v. Conerly, 973 F.2d 321 (4th Cir. 1992), precluded the application of qualified immunity because the parties presented irreconcilable accounts of why Lowery was shot.

Lowery, Redd, and Stovall appealed the district court's initial order granting summary judgment, and based upon the reasoning of the district court, we affirmed in toto the district court's decision. Lowery v. Redd, 14 F.3d 595, 1993 WL 527998 (4th Cir. Dec. 21, 1993) (unpublished), cert. denied, 114 S. Ct. 2676 (1994).

While this case was pending on remand, Lowery, who had been found competent to stand trial, pleaded guilty to violating Va. Code § 18.2-51.1. In addition to pleading guilty, Lowery signed a statement admitting that (1) he maliciously attacked Officer Redd, (2) he intended to kill him, if necessary, to escape, and (3) he knew of the consequences that his guilty plea would have on his civil suit:

> 3. I was selling cocaine in South [B]oston before my arrest and the cocaine I had with me when the officers arrested me was possessed by me for later sale.
>
> 4. On February 1, 1991 when I was arrested, I cut Officer Thomas E. Redd on the face with a metal key holder

---

[2] Lowery also named South Boston and its police chief as defendants in his lawsuit, alleging that the violation of his constitutional rights was caused by an official policy or custom of these two defendants.

4

because I wanted to escape custody. I knew he would find my cocaine. I intended to maim and disable him and at the time Officer Stovall shot me I was intending to kill Redd if I had to [in order] to get away.

. . .

6. I have discussed this thoroughly with my attorney Mr. Crowder, including the implications of this plea for my civil case. Having considered all of this I believe it is in my best interest to proceed.

7. I have delayed pleading guilty because of the pendency of the civil suit I filed for my injuries in this episode. At all times I was guilty of these charges, and I knew I was.

(J.A. 686).

Finally, in taking Lowery's guilty plea, the state trial judge meticulously reviewed Lowery's statement to make certain that each of the statements was indeed true and that Lowery understood the statements. After taking Lowery's guilty plea and hearing a summary of the state's evidence from a prosecution witness, the trial judge accepted Lowery's guilty plea, finding Lowery was "in fact guilty of each charge." (J.A. 769).

Based on Lowery's guilty plea and statement, Stovall refiled his motion for summary judgment and Redd supplemented his previous motion for summary judgment, arguing that Lowery's guilty plea rendered the parties' factual dispute moot. Although summary judgment based on qualified immunity is inappropriate "where what actually happened . . . need[s] to be resolved by the trier of fact in order to reach a decision on the applicability of qualified immunity," Rainey, 973 F.2d at 324, the district court found that it did not need to resolve the conflicting versions of the shooting because Lowery was precluded by the doctrine of judicial estoppel from disputing that he maliciously attacked Redd before Stovall shot him.

5

Because the district court precluded Lowery from disputing that he maliciously attacked Redd before being shot by Stovall, it held that Stovall was entitled to qualified immunity because "Stovall's behavior would appear objectively reasonable from the perspective of the officer at the time of the shooting." (J.A. 1006). The district court also held, regardless of the propriety of its ruling concerning judicial estoppel, that Redd was entitled to qualified immunity on Lowery's claim that Redd breached his alleged duty to protect him because there was no clearly established standard to govern Redd's actions. Lowery then noted this appeal.

II

Lowery claims that Stovall's shooting him for allegedly no reason constituted the use of excessive force, and thus, violated his Fourth Amendment right to be free from unreasonable seizures. In judging the reasonableness of a seizure, we consider three factors: "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade by flight." Graham v. Connor, 490 U.S. 386, 396 (1989). In addition, "[t]he `reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id.

Stovall claims that he is entitled to qualified immunity on Lowery's excessive force claim. A defendant, such as Stovall, is entitled to qualified immunity if his conduct did not contravene "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The clearly established standard for the use of excessive force at the time of this incident was whether a reasonable officer in Stovall's place could have had probable cause to believe that Lowery posed a threat of serious harm to himself or Redd. See Tennessee v. Garner, 471 U.S. 1, 11 (1985); McLenagan v. Karnes, 27 F.3d 1002, 1006-07 (4th Cir.) (citing Garner), cert. denied , 115 S. Ct. 581 (1994). We have stated that an officer in Stovall's position is entitled to qualified immunity if "a reasonable officer possessing the same particularized information as [Stovall] could have, in light of Garner, believed that his conduct was lawful. . . ." McLenagan, 27 F.3d at 1007.

6

We have no doubt that Lowery's present allegations, if true, constitute a violation of his clearly established rights. But Stovall contends that Lowery's present allegations are irrelevant. Specifically, Stovall argues that Lowery is precluded from making these allegations by the doctrine of judicial estoppel because his present allegations are inconsistent with his prior guilty plea. Thus, Stovall reasons that he is entitled to qualified immunity because Lowery's admission that he maliciously attacked Redd shows that a reasonable officer in Stovall's place could have believed that shooting Lowery was lawful.

Lowery, however, contends that his present allegations cannot be precluded by the doctrine of judicial estoppel. We disagree.

A

We first discuss the principles underlying the doctrine of judicial estoppel. When a party attempts to assert a position that is inconsistent with a prior position that the party has successfully asserted in another court, courts have a number of steps that they may take to prevent such an attempted abuse of the judicial process. For example, courts may apply collateral estoppel (also known as issue preclusion) or equitable estoppel to prevent the attempted abuse. In addition to those doctrines, courts may apply the closely related doctrine of judicial estoppel.[3] "Judicial estoppel precludes a party from adopting a

_____

[3] Judicial estoppel is "[c]losely related to collateral estoppel, but [it is] dissimilar in critical respects." Allen v. Zurich Ins. Co., 667 F.2d 1162, 1166 (4th Cir. 1982). For example, judicial estoppel does not require that the issue be actually litigated in the prior proceeding or that the parties meet the requirement of mutuality, even if the mutuality requirement is recognized by state law, as it is here. See Selected Risks Ins. Co. v. Dean, 355 S.E.2d 579, 581 (Va. 1987). One reason for these differences is that judicial estoppel is a matter of federal law, not state law, see Allen, 667 F.2d at 1167 n.2, especially when the court's jurisdiction is based on the presence of a federal question rather than the diversity of the parties.

Judicial estoppel is also closely related to equitable estoppel. See Rand G. Boyers, Comment, Precluding Inconsistent Statements: The Doctrine of Judicial Estoppel, 80 Nw. U.L. Rev. 1244, 1248 (1986). Unlike equitable estoppel, a party asserting judicial estoppel does not have to prove detrimental reliance because judicial estoppel is designed to protect the

position that is inconsistent with a stance taken in prior litigation. The purpose of the doctrine is to prevent a party from playing fast and loose with the courts, and to protect the essential integrity of the judicial process." John S. Clark Co. v. Faggert & Frieden, P.C., 65 F.3d 26, 28-29 (4th Cir. 1995) (citations and internal quotation marks omitted). See also Mark J. Plumer, Note, Judicial Estoppel: The Refurbishing of a Judicial Shield, 55 Geo. Wash. L. Rev. 409, 435 (1987) ("Judicial estoppel is properly defined as a bar against the alteration of a factual assertion that is inconsistent with a position sworn to and benefitted from in an earlier proceeding.").

Courts have had difficulty in formulating a specific test for determining when judicial estoppel should be applied. See Patriot Cinemas, Inc. v. General Cinema Corp., 834 F.2d 208, 212 (1st Cir. 1987) ("The specific requirements, however, are `rather vague' and vary from state to state and from circuit to circuit. In fact, some circuits and jurisdictions have never recognized the doctrine.") (citations omitted); Allen, 667 F.2d at 1166 ("The circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle. .. ."). But, nonetheless, there are certain elements that have to be met before courts will apply judicial estoppel.

First, the party sought to be estopped must be seeking to adopt a position that is inconsistent with a stance taken in prior litigation. Id. And the position sought to be estopped must be one of fact rather than law or legal theory. Tenneco, 691 F.2d at 664-65; Plumer, supra, at 411.

Second, the prior inconsistent position must have been accepted by the court. Teledyne, 911 F.2d at 1218; see Allen, 667 F.2d at 1167

_____

integrity of the courts rather than any interests of the litigants. See Teledyne Indus., Inc. v. NLRB, 911 F.2d 1214, 1220 (6th Cir. 1990); Tenneco Chems. v. William T. Burnett & Co., Inc., 691 F.2d 658, 665 (4th Cir. 1982).

Therefore, judicial estoppel may apply in a particular case "where neither collateral estoppel nor equitable estoppel . . . would apply." Allen, 667 F.2d at 1166-67.

(finding that "the record conclusively shows" that the party had successfully asserted a prior inconsistent position). The insistence upon a court having accepted the party's prior inconsistent position ensures that judicial estoppel is applied in the narrowest of circumstances. Indeed, "the prior success rule narrows the scope of judicial estoppel to the point at which the necessity of protecting judicial integrity outweighs the ramifications of that protection upon the litigant and the judicial system." Boyers, supra note 3, at 1256. Because of the harsh results attendant with precluding a party from asserting a position that would normally be available to the party, judicial estoppel must be applied with caution. See Faggert & Frieden, 65 F.3d at 29.

Finally, the party sought to be estopped must have "intentionally misled the court to gain unfair advantage." Tenneco, 691 F.2d at 665. Indeed, we have stated that this factor is the "determinative factor" in the application of judicial estoppel to a particular case. Id.; Faggert & Frieden, 65 F.3d at 29. Thus, courts will not apply judicial estoppel "when a party's prior position was based on inadvertence or mistake." Faggert & Frieden, 65 F.3d at 29. With these principles in mind, we turn to consider whether the district court erred in applying the doctrine of judicial estoppel to preclude Lowery from contradicting the statements he made when he pleaded guilty to violating Va. Code § 18.2-51.1.

B

Our review of the record shows that the district court properly applied the doctrine of judicial estoppel to preclude Lowery from disputing that he maliciously attacked Redd before Stovall shot him.

First, Lowery's present position regarding the circumstances of the shooting is contradictory to the position he took when he pled guilty. During his guilty plea hearing, Lowery admitted to maliciously attacking Redd. Specifically, the trial judge, in taking Lowery's guilty plea, asked if Lowery had cut Redd on the face with the metal key holder to escape, and Lowery said that he had. Lowery's present position, however, is that he did not attack Redd with the magnetic key holder prior to the shooting and that Stovall shot him without reason.

Lowery argues that these positions are reconcilable. Specifically, Lowery contends that his statement does not show when he cut Redd.

9

Thus, Lowery reasons that his statement is consistent with his present position because the statement allegedly does not foreclose the possibility that he cut Redd on the face by scratching Redd as he was trying to crawl into the patrol car after being shot by Stovall.

Lowery's argument, however, is undercut by the plain language in his statement accompanying his guilty plea:

> On February 1, 1991 when I was arrested, I cut Officer Thomas E. Redd on the face with a metal key holder <u>because I wanted to escape custody</u>. I knew he would find my cocaine. I intended to maim and disable him and at the time Officer Stovall shot me I was intending to kill Redd if I had to [in order] to get away.

(J.A. 686) (emphasis added). The "wanted to escape custody" language cannot be reconciled with Lowery's claim that he scratched Redd as he was trying to get back into the patrol car because the positions are diametrically opposed to each other. Because Lowery's present position necessarily conflicts with his prior position, the first requirement for applying judicial estoppel has been met.

Next, we consider whether the trial judge accepted Lowery's prior inconsistent position. "[J]udicial acceptance means only that the first court has adopted the position urged by the party . . . as part of a final disposition." <u>Edwards v. Aetna Life Ins. Co.</u>, 690 F.2d 595, 599 n.5 (6th Cir. 1982). Although judicial estoppel does not apply to the settlement of an ordinary civil suit because "there is no `judicial acceptance' of anyone's position,"[4] the taking of a guilty plea in a criminal proceeding is not similar to the settlement of a civil suit.

In taking the guilty plea, the trial judge had a duty to determine that Lowery entered his guilty plea "voluntarily with an understanding of the nature of the charge and the consequences of the plea." Va. S. Ct. Rule 3A:8(b). The record of the plea proceeding shows beyond dis-

---

[4] **Reynolds v. Commissioner**, 861 F.2d 469, 473 (6th Cir. 1988) (finding a bankruptcy court's approval of a settlement between a debtor and one of his creditors constitutes a "judicial acceptance" because the court has a duty to make sure the settlement is fair and equitable).

10

pute that the trial judge carried out this mandate. Moreover, the record here shows that the trial judge had a factual basis for finding Lowery guilty. The trial judge asked Lowery whether each of the assertions in the statement accompanying his guilty plea was true, rather than whether he merely understood the statements. Further, the court heard a summary of the state's evidence from a prosecution witness. Significantly, in sentencing Lowery, the trial judge stated that Lowery was "in fact guilty of each charge." (J.A. 769). Thus, we find that the trial judge accepted Lowery's position when he accepted his guilty plea.

Finally, we turn to the issue of whether Lowery's attempt to assert his present position is an intentional attempt to mislead the court to gain unfair advantage in this action. By pleading guilty, Lowery received a drastically reduced sentence. Because of his criminal record, Lowery was facing forty to sixty years imprisonment before entering into a plea agreement with the State. In exchange for his pleading guilty and signing the accompanying statement, the State agreed to recommend that Lowery be sentenced to only ten years, suspended after the service of two years in prison. After Lowery carried out his part of the bargain, the State kept its word and recommended that he receive a ten-year sentence with eight years suspended; a sentence that the trial judge imposed upon him. But, after receiving the benefit of the plea bargain, Lowery now wants to have it the other way, arguing that we should find that he did not maliciously attack Redd.

For the reasons aptly expressed by Professor Hazard, we find this argument "too much to take":

> Particularly galling is the situation where a criminal convicted on his own guilty plea seeks as a plaintiff in a subsequent civil action to claim redress based on a repudiation of the confession. The effrontery or, as some might say it, chutzpah, is too much to take. There certainly should be an estoppel in such a case.

Geoffrey Hazard, Revisiting the Second Restatement of Judgments; Issue Preclusion and Related Problems, 66 CORNELL L. REV. 564, 578 (1981). As it is clear that Lowery is "blowing hot and cold as the

11

occasion demands"[5] or wanting to "have [his] cake and eat it too,"[6] we conclude that Lowery's arguments are nothing more than an intentional attempt to mislead the district court and this court to gain unfair advantage in this action. Thus, the district court did not err in finding that the doctrine of judicial estoppel precluded Lowery from arguing that he did not maliciously attack Redd. See Lichon v. American Universal Ins. Co., 459 N.W.2d 288, 293 (Mich. 1990) (finding that if a plea of nolo contendere constituted an admission of guilt then the defendant would be judicially estopped from asserting he was innocent of the charge to which he plead nolo contendere); People v. Goestenkors, No. 5-94-0870, 1996 WL 88283, at **2-3 (Ill. App. Ct. Feb. 29, 1996) (finding that after pleading guilty a party is estopped from asserting his preplea position because "[t]he law will not tolerate a party in a legal proceeding swearing under oath to the untruth of some matter and then swearing under oath to the truth of that same matter").

C

Next, we consider whether the district court properly concluded, in light of Lowery's guilty plea, that Stovall was entitled to qualified immunity.

Lowery has strenuously opposed the district court's use of his guilty plea to preclude him from disputing whether he maliciously attacked Redd before Stovall shot him. But, significantly, he has not taken issue with the district court's conclusion that Stovall, upon seeing Lowery attack Redd and hearing Redd yell that Lowery had a knife, would have had probable cause to believe that Lowery posed a threat of serious harm to Redd. See Tennessee v. Garner, 471 U.S. 1, 11 (1985) (finding a police officer has the right to use deadly force only if the officer had probable cause to believe that the suspect poses a threat of serious harm to the officer or others). We believe Lowery's decision not to take issue with the district court's conclusion was wise because the district court properly found Stovall acted as a reasonable

---

[5] **Allen**, 667 F.2d at 1167 n.3.
[6] **Duplan Corp. v. Deering Milliken, Inc.**, 397 F. Supp. 1146, 1177 (D.S.C. 1974).

12

officer would have in his situation, and therefore, Stovall is entitled to qualified immunity. See McLenagan, 27 F.3d at 1007-08 ("We will not second-guess the split-second judgment of a trained police officer merely because that judgment turns out to be mistaken, particularly where inaction could have resulted in death or serious injury to the officer and others."); Slattery v. Rizzo, 939 F.2d 213, 216-17 (4th Cir. 1991) (finding police officer who shot the plaintiff while conducting a sting operation was entitled to qualified immunity because the police officer believed the plaintiff was coming at him with a weapon that turned out to be a beer bottle).

Therefore, the district court's grant of summary judgment to Stovall is affirmed.

D

Finally, we conclude that the district court's grant of summary judgment in favor of Redd was proper. Lowery alleged that Redd owed him a duty to protect him from Stovall's use of excessive force and that Redd breached this duty. Having concluded that Stovall's use of force was reasonable under the circumstances, Lowery's claim against Redd necessarily fails.

Therefore, the district court's grant of summary judgment to Redd is affirmed.[7]

III

Accordingly, for all the foregoing reasons, the grant of summary judgment in favor of Stovall and Redd is affirmed.

AFFIRMED

_____

[7] In any event, the district court properly found that Redd would be entitled to qualified immunity on this claim because there was no clearly established standard to govern Redd's actions. See McLenagan, 27 F.3d at 1008 n.9.

13