**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JAMES E. RAGAN, III,
Plaintiff-Appellee,

and

REPUBLICAN PARTY OF NORTH
CAROLINA; MARVIN K. GRAY; BRUCE
BRIGGS; FREDERIC M. GALLAGHER;
LLOYD FOWLER; JOE R. WILSON;
R. WALTER WHITE; RALPH A.
WALKER; EDGAR A. READLING, JR.;
R. HOWARD RIDDLE; WILLIAM R.
SIGMON,
Plaintiffs,

v.

JAMES R. VOSBURGH,
Defendant-Appellant,

JAMES B. HUNT, Governor of North
Carolina; JUNE K. YOUNGBLOOD;
EDWARD J. HIGH; JEAN H. NELSON;
LARRY LEAKE; DOROTHY PRESSER;
NORTH CAROLINA STATE BOARD OF
ELECTIONS,
Defendants-Appellees,

and

NORTH CAROLINA ASSOCIATION OF
BLACK LAWYERS; DURHAM COUNTY
BOARD OF ELECTIONS; FORSYTH
COUNTY BOARD OF ELECTIONS;
GUILFORD COUNTY BOARD OF
ELECTIONS; CARL L. TILGHMAN,
Defendants.

No. 96-2621

JAMES E. RAGAN, III,
Plaintiff-Appellee,

and

REPUBLICAN PARTY OF NORTH
CAROLINA; MARVIN K. GRAY; BRUCE
BRIGGS; FREDERIC M. GALLAGHER;
LLOYD FOWLER; JOE R. WILSON;
R. WALTER WHITE; RALPH A.
WALKER; EDGAR A. READLING, JR.;
R. HOWARD RIDDLE; WILLIAM R.
SIGMON,
Plaintiffs,

v.

JAMES B. HUNT, Governor of North
Carolina; JUNE K. YOUNGBLOOD;

EDWARD J. HIGH; JEAN H. NELSON;
LARRY LEAKE; DOROTHY PRESSER;
NORTH CAROLINA STATE BOARD OF
ELECTIONS,
Defendants-Appellants,

JAMES R. VOSBURGH, CARL L.
TILGHMAN,
Defendants-Appellees,

and

NORTH CAROLINA ASSOCIATION OF
BLACK LAWYERS; DURHAM COUNTY
BOARD OF ELECTIONS; FORSYTH
COUNTY BOARD OF ELECTIONS;
GUILFORD COUNTY BOARD OF
ELECTIONS,
Defendants.

No. 96-2687

2

JAMES E. RAGAN, III,
Plaintiff-Appellee,

and

REPUBLICAN PARTY OF NORTH
CAROLINA; MARVIN K. GRAY; BRUCE
BRIGGS; FREDERIC M. GALLAGHER;
LLOYD FOWLER; JOE R. WILSON;
R. WALTER WHITE; RALPH A.
WALKER; EDGAR A. READLING, JR.;
R. HOWARD RIDDLE; WILLIAM R.
SIGMON,
Plaintiffs,

v.

CARL L. TILGHMAN,
Defendant-Appellant,                                No. 96-2739

JAMES B. HUNT, Governor of North
Carolina; JUNE K. YOUNGBLOOD;
EDWARD J. HIGH; JEAN H. NELSON;
LARRY LEAKE; DOROTHY PRESSER;
NORTH CAROLINA STATE BOARD OF
ELECTIONS,
Defendants-Appellees,

and

NORTH CAROLINA ASSOCIATION OF
BLACK LAWYERS; DURHAM COUNTY
BOARD OF ELECTIONS; FORSYTH
COUNTY BOARD OF ELECTIONS;
GUILFORD COUNTY BOARD OF
ELECTIONS; JAMES R. VOSBURGH,
Defendants.

3

Appeals from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
James C. Fox, Chief District Judge.
(CA-88-263-5-F)

Argued: March 3, 1997

Decided: April 10, 1997

Before RUSSELL, WILKINS, and HAMILTON, Circuit Judges.

_____

Dismissed by unpublished opinion. Judge Wilkins wrote the opinion,
in which Judge Russell and Judge Hamilton joined.

_____

**COUNSEL**

**ARGUED:** George Gray Cunningham, CUNNINGHAM & GRAY,
P.A., Wilkesboro, North Carolina; Carl Lewis Tilghman, Beaufort,
North Carolina, for Appellants. Norman Smithwick Harrell, Special
Deputy Attorney General, NORTH CAROLINA DEPARTMENT OF
JUSTICE, Raleigh, North Carolina; James Edward Ragan, III, Orien-
tal, North Carolina, for Appellees. **ON BRIEF:** Michael F. Easley,
North Carolina Attorney General, Edwin M. Speas, Jr., Senior Deputy
Attorney General, NORTH CAROLINA DEPARTMENT OF JUS-
TICE, Raleigh, North Carolina, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

WILKINS, Circuit Judge:

Following a remand by this court, the district court reaffirmed its
prior holding that the statewide method of electing superior court

4

judges in North Carolina that was in effect when this lawsuit was filed in 1987 constituted a political gerrymander intended to deprive members of the Republican Party, and those aligned with it, of rights guaranteed under the Equal Protection Clause of the Fourteenth Amendment. In addition, the district court considered a measure, known as Chapter 9, enacted by the North Carolina General Assembly while this action was pending before the district court on remand. Chapter 9 prospectively altered the method of election for superior court judges and confirmed that the results of the 1994 elections for superior court judges were properly decided on the basis of a district-wide vote. The district court ruled that Chapter 9 mooted this action with respect to elections subsequent to 1994 and was not violative of the due process or equal protection guarantees of the United States Constitution to the extent that it purported to determine retroactively the victors of the 1994 elections. James R. Vosburgh and Carl L. Tilghman appeal, urging us to hold that the statewide election scheme in effect when this litigation was filed was constitutional and that the retroactive aspect of Chapter 9 is unconstitutional. Because Vosburgh and Tilghman are judicially estopped from asserting the constitutionality of the election scheme in effect when this litigation was filed, we conclude that this action is moot. Thus, we dismiss this appeal.

I.

The Republican Party of North Carolina and others (collectively, "RPNC") brought this action in 1987 against the North Carolina State Board of Elections and others (collectively, "NCSBE"), challenging the method in effect at that time for electing superior court judges in North Carolina. That scheme involved partisan, districtwide primaries followed by partisan, statewide elections. RPNC claimed that this method of election constituted a political gerrymander intended to deprive members of the Republican Party, and those aligned with it, of rights guaranteed under the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. RPNC sought declaratory and injunctive relief.

In an earlier appeal, we reversed a decision of the district court dismissing RPNC's complaint on the basis that it raised a nonjusticiable controversy. See Republican Party of N.C. v. Martin, 980 F.2d 943 (4th Cir. 1992) (RPNC I). After concluding that the controversy was

5

justiciable, we determined that the complaint failed to state a claim for which relief could be granted for violations of the First Amendment, but that the complaint adequately stated a claim under the Fourteenth Amendment. See id. at 961. Specifically, we held that RPNC sufficiently alleged a prima facie case of vote dilution brought about by political gerrymandering, i.e., it alleged "`intentional discrimination against an identifiable political group and an actual discriminatory effect on that group.'" Id. at 955 (quoting Davis v. Bandemer, 478 U.S. 109, 127 (1986)); see id. at 955-58. Accordingly, we reversed in part and remanded for further proceedings. See id. at 961.

On remand, RPNC sought preliminary injunctive relief. Applying the balancing of hardships test set forth in Blackwelder Furniture Co. of Statesville v. Seilig Mfg. Co., 550 F.2d 189 (4th Cir. 1977), the district court concluded that preliminary relief was appropriate. See Republican Party of N.C. v. Hunt, 841 F. Supp. 722, 726-33 (E.D.N.C. 1994). In considering NCSBE's appeal from that order, we concluded that the district court had not abused its discretion in determining that some form of preliminary injunctive relief was appropriate; however, we held that the preliminary relief ordered by the district court went too far by requiring that the winners of the elections be determined by the districtwide results. See Republican Party of N.C. v. North Carolina State Bd. of Elections, 27 F.3d 563 (4th Cir. June 17, 1994) (unpublished table decision) (RPNC II). We explained that this requirement created a situation in which, if NCSBE prevailed on the merits after newly elected judges had been seated, it would be necessary to unseat judges who were elected on a districtwide basis and replace them with the statewide winners. We were convinced that this prospect established more than a likelihood of minor harm. Further, we specifically noted that the requirement imposed by the district court that the winners of the elections be determined by districtwide results would deprive North Carolina, through its legislature, of the first opportunity to determine how to remedy the constitutional violation, if one was found. Accordingly, we modified the preliminary relief ordered by the district court to omit the requirement that the prevailing candidates in the districtwide elections be declared the winners of the elections. Instead, we ordered that if the November 1994 elections produced a situation in which the winners in the statewide elections were not the winners as tallied by the other methods required under the district court order, the judges who held those seats

6

were to holdover in office until such time as the litigation and appropriate relief, if required, was finally resolved.

On remand, the district court heard the merits of the case based on 311 stipulations submitted by the parties and documentary evidence. Thereafter, on November 3, 1994, just five days before scheduled elections, the district court entered an order ruling in favor of RPNC on the merits. The district court found that RPNC had proven that the electoral system for superior court judges was implemented and maintained with a discriminatory motive of promoting the political agenda of the Democratic Party. Further, the court found that RPNC had adequately demonstrated discriminatory effects that were more than de minimis. The district court explained that NCSBE had proffered four justifications for the electoral system: (1) that the electoral base should reflect the jurisdictional base of the judges (i.e., that superior court judges possessed statewide jurisdiction and so should be selected statewide); (2) districtwide elections would deprive persons outside the district, but in the division where the judge regularly sits, the opportunity to vote for the judge who regularly holds court in their division; (3) statewide elections foster independence of the judiciary by preventing judges from having to rely on a small constituency for election; and (4) districtwide elections would be inconsistent with rotation within the division. Although the court found the proffered goals to be facially valid, it concluded that none were rationally related to the statewide election system. Accordingly, the court determined that the proffered justifications were pretextual in nature and did not justify the "egregious discrimination." J.A. 5317a.

Having thus decided the merits of the litigation in RPNC's favor, the district court ordered a permanent injunction. The court required that tallies of the November 1994 election results be maintained for the state, division, and district, but ordered that judicial elections would be conducted, and the winners of the elections would be declared, based on the district election results"until such time as the North Carolina General Assembly takes steps to fashion an alternative remedial plan for the election of superior court judges that meets with applicable constitutional requirements." J.A. 5320a. Further, the court enjoined the defendants from reinstituting the statewide election system in the future.

7

When elections went forward on November 8, 1994, all eight of the Republican candidates vying for superior court judgeships were elected at the state level. These startling results were directly at odds with the prediction of the district court only five days earlier that Republican electoral exclusion would continue into the future under the statewide election scheme. NCSBE, however, did not move the district court to reconsider its decision in light of the results of the 1994 elections pursuant to Federal Rules of Civil Procedure 59 or 60(b). Instead, NCSBE appealed.

As a result of the November 1994 elections, five Republican candidates for superior court judgeships were seated. Two Republican candidates, James R. Vosburgh and Carl L. Tilghman, were defeated at the district level, and the candidacy of a third was invalidated in a separate proceeding because he failed to comply with a residency requirement. The Democrat incumbent judges who prevailed in the elections at the district level were seated and commissioned for eight-year terms pursuant to the injunctive relief ordered by the district court.

In considering NCSBE's appeal from the decision of the district court that the statewide election scheme was unconstitutional, we became convinced that the results of the 1994 elections should be taken into account and that the district court should be given the opportunity to reconsider its decision in light of those results in the first instance. Therefore, we remanded to permit the district court to reconsider its decision in light of the results of the 1994 elections. See Republican Party of N.C. v. Hunt, 77 F.3d 470 (4th Cir. 1996) (per curiam) (unpublished table decision) (RPNC III ).

While the action was pending before the district court on remand, Judge James E. Ragan, III--one of the Democrat incumbents who retained his seat because he had prevailed at the district level, but who had not been victorious in the statewide election--was permitted to intervene. In addition, Vosburgh and Tilghman--the two Republican judges who won at the state level, but were not seated because they lost at the district level--were permitted to intervene. The district court, however, indicated that it was not inclined to rule until the North Carolina legislature had had an opportunity to act.

8

On August 2, 1996, the North Carolina General Assembly enacted legislation addressing the method for electing superior court judges. Referred to as Chapter 9 throughout this litigation, the legislation provided that in the future superior court judges would be elected by district; elections after 1996 would be conducted on a nonpartisan basis. Furthermore, Chapter 9 ratified and confirmed the 1994 election of judges by district.**1**

Vosburgh and Tilghman maintained that the district court should declare Chapter 9 unconstitutional to the extent that it purported to alter retroactively the method of electing superior court judges. They asserted that to the extent that Chapter 9 professed to determine the results of the 1994 elections, it deprived them of the due process and equal protection guarantees encompassed in the Fourteenth Amendment. Furthermore, they contended that the statewide method of election was constitutional and that, accordingly, as victors at the state level in the 1994 elections, they were entitled to be seated as superior court judges.

The district court disagreed. It concluded that Chapter 9 was constitutional, and indicating that it had reconsidered its prior merits ruling in light of the results of the 1994 elections in accordance with our mandate, it reaffirmed the conclusions in its November 1994 order as they "relate[d] to historic practices in the election of superior court judges in North Carolina through the 1994 election." S.J.A. 489. The district court, however, failed to offer any reasoning in support of this holding. The court then lifted the injunction it had imposed following its November 4, 1994 merits decision, reasoning that "the issue has been mooted by the enactment and preclearance of Chapter 9." Id.

Vosburgh and Tilghman appeal from that decision, challenging the holdings of the district court both with respect to the constitutionality of the statewide election scheme and the retroactive application of Chapter 9.**2** NCSBE maintains that this litigation has become moot

_____

**1** Chapter 9 subsequently received preclearance by the United States Department of Justice. See 42 U.S.C.A. § 1973c (West 1994).
**2** RPNC is not involved in the proceedings before this court because it no longer has any stake in the outcome of this litigation, having obtained that which it sought--modification of the method of electing superior court judges--through legislative channels.

9

because the method of election that was under consideration has been amended. Alternatively, it claims that although the district court was incorrect in holding that the statewide election scheme constituted an unconstitutional political gerrymander, the ratification in Chapter 9 of the propriety of seating the candidates for superior judge who prevailed at the district level in the 1994 elections was constitutional, so Vosburgh and Tilghman are not entitled to be seated as superior court judges. Finally, Ragan maintains that the statewide election scheme was unconstitutional and that Chapter 9 is constitutional.

II.

Federal courts are empowered by the United States Constitution to adjudicate only actual, ongoing controversies. See Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 546 (1976); Preiser v. Newkirk, 422 U.S. 395, 401 (1975). That a live controversy existed when an action was filed will not suffice--a dispute must continue to exist at each successive stage of the proceedings to permit a federal court to rule because "a federal court has neither the power to render advisory opinions nor `to decide questions that cannot affect the rights of litigants in the case before them.'" Preiser, 422 U.S. at 401 (quoting North Carolina v. Rice, 404 U.S. 244, 246 (1971)); see Steffel v. Thompson, 415 U.S. 452, 459 n.10 (1974). Litigation challenging the validity of legislation and seeking only prospective relief ordinarily is rendered moot if during the pendency of the action the legislation is repealed or amended in a significant way such that the allegedly offensive provision ceases to exist. See, e.g. , United States Dep't of the Treasury v. Galioto, 477 U.S. 556, 559-60 (1986) (explaining that a challenge to federal firearms statute was moot after Congress amended the statute to eliminate the allegedly discriminatory provision); Princeton Univ. v. Schmid, 455 U.S. 100, 103 (1982) (per curiam) (holding that a substantial amendment to a regulation rendered litigation challenging its validity moot); New Orleans Flour Inspectors v. Glover, 160 U.S. 170 (1895) (repeal of provision under attack rendered litigation moot). However, because"a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice," even when an allegedly unconstitutional provision has been repealed or amended, a live controversy might continue to exist if the legislation was not altered significantly, if a possibility exists that the legislature

10

may reenact the provision, or if relief other than prospective relief were requested. <u>Northeastern Fla. Chapter of the Assoc. Gen. Contractors of Am. v. City of Jacksonville</u>, 508 U.S. 656, 662 & n.3 (1993) (internal quotation marks omitted); <u>see City of Richmond v. J.A. Croson Co.</u>, 488 U.S. 469, 478 n.1 (1989); <u>City of Mesquite v. Aladdin's Castle, Inc.</u>, 455 U.S. 283, 289 n.10 (1982).

The parties before us do not dispute that, except for the elections for superior court judges conducted in November 1994, no live controversy remains concerning the constitutionality of the statewide, partisan, election scheme in place prior to the enactment of Chapter 9. Excluding the possible impact that the prior scheme may have on the 1994 elections, the parties agree that the prior election scheme was altered to omit the allegedly unconstitutional defect, that virtually no possibility exists that the North Carolina legislature will reenact the challenged election scheme, and that only prospective relief was requested. Consequently, it is clear that this case is moot except to the extent that the constitutionality of the statewide election scheme in effect prior to the enactment of Chapter 9 may affect the result of the 1994 elections.

As noted above, a different result was obtained between the statewide and districtwide tallies in the 1994 elections in only two instances.[3] The only parties proceeding before this court that maintain that a live controversy remains with respect to the 1994 election are the two candidates who would have been seated under the statewide election scheme--Vosburgh and Tilghman.[4] They contend that this action is

_____

[3] Although three judges were elected at the statewide level who were not elected at the districtwide level, the candidacy of the third affected individual was invalidated due to his failure to comply with a residency requirement. Therefore, the only two candidates affected are Vosburgh and Tilghman.

[4] NCSBE included a section in its brief asserting that the statewide scheme for election of superior court judges in effect prior to the enactment of Chapter 9 was constitutional. NCSBE acknowledges, however, that it has no stake in asserting this position inasmuch as the North Carolina legislature has modified the election scheme prospectively and Chapter 9 ratified the appropriateness of deciding the victors of the 1994 elections based on the districtwide vote.

11

not moot with respect to the 1994 elections because if the statewide election scheme is declared constitutional by this court, as victors under that constitutional scheme, they are entitled to be seated as superior court judges. Furthermore, their argument continues, the provision in Chapter 9 purporting to ratify the election results does not alter their entitlement to their rightful seats because application of that provision would violate their rights to due process and equal protection guaranteed by the Fourteenth Amendment. Because Vosburgh and Tilghman are judicially estopped from asserting that the statewide election scheme is constitutional, however, we conclude that this litigation is moot in its entirety.

The doctrine of judicial estoppel prevents a party from attempting to assert a position that is inconsistent with a factual stance that he previously intentionally and successfully asserted. See Lowery v. Stovall, 92 F.3d 219, 223-24 (4th Cir. 1996), cert. denied, 117 S. Ct. 954 (1997); John S. Clark Co. v. Faggert & Frieden, P.C., 65 F.3d 26, 28-29 (4th Cir. 1995). "Judicial estoppel is properly defined as a bar against the alteration of a factual assertion that is inconsistent with a position sworn to and benefitted from in an earlier proceeding." Lowery, 92 F.3d at 223 (internal quotation marks omitted). The doctrine of judicial estoppel seeks to protect the integrity of the courts by preventing a party "from playing fast and loose" in its dealings with them. Id. (internal quotation marks omitted); see John S. Clark Co., 65 F.3d at 29 ("The vice which judicial estoppel prevents is the cold manipulation of the courts . . . ."). In order for the bar imposed by judicial estoppel to apply: (1) the party to be barred must be attempting to assert a position that is inconsistent with one previously taken; (2) the position must be one of fact; (3) the position must have been accepted by the court in the earlier proceeding; and (4) the party to be barred must have acted intentionally, not inadvertently or by mistake, in taking the prior inconsistent position. See Lowery, 92 F.3d at 224.

Application of these factors to the present situation convinces us that Vosburgh and Tilghman are judicially estopped from asserting the constitutionality of the statewide election scheme. It is clear that Vosburgh and Tilghman initially asserted before the district court that the statewide election scheme amounted to an unconstitutional political gerrymander. In support of their position that the statewide elec-

12

tion scheme was unconstitutional, they offered their affidavits and deposition testimony that, as a factual matter, the statewide election scheme was maintained for the purpose and had the effect of diluting Republican voting strength--positions sharply inconsistent with the one they presently assert. For example, Vosburgh stated that "the statewide system of electing Superior Court judges has been designed and maintained for the purpose of diluting Republican votes for candidates for the office of Superior Court judge." J.A. 4505a. Similarly, Tilghman stated that "[t]he statewide election system definitely has the effect of diluting Republican votes for candidates for the office of Superior Court Judge. I believe that it has been maintained for the same reason." J.A. 4486a. Furthermore, Vosburgh and Tilghman stated that they would not have become candidates for the office of superior court judge except for the preliminary relief ordered by the district court. Their previous stance was accepted by the district court in holding the statewide election scheme violative of the Fourteenth Amendment. And, Vosburgh and Tilghman's previous position was intentionally taken, not inadvertent or mistaken. It was only after the 1994 elections when they prevailed in the statewide vote, but lost in the districtwide vote, that Vosburgh and Tilghman changed their position to the one they now assert on appeal. Consequently, having previously encouraged the district court to accept their factual position that the statewide election system for superior court judges was maintained for the purpose and had the effect of diluting Republican voting strength and was thus unconstitutional, Vosburgh and Tilghman are judicially estopped from now asserting the constitutionality of that system.

Because the challenge to the statewide election scheme is unquestionably moot with respect to elections subsequent to those conducted in November 1994, and because no party before the court properly may assert the constitutionality of the statewide election scheme with respect to those elections, this action is moot in its entirety. Therefore, we dismiss this appeal as moot.

DISMISSED

13