**De'Sean DORSEY**

v.

**Officer W. RUTH**

**No. CIV.A. CCB–01–2135.**

United States District Court,
D. Maryland.

Sept. 23, 2002.

De'Sean Dorsey, Baltimore, MD, Pro se.

Edward J. Gilliss, Jeffrey Grant Cook, Towson, MD, for Defendant.

### *MEMORANDUM*

BLAKE, District Judge.

The plaintiff, De'Sean Dorsey, filed suit against the defendant, Baltimore County

Police Officer William Ruth, under 42 U.S.C. § 1983, alleging that his Fourth Amendment rights were violated when Officer Ruth shot him without justification. Officer Ruth has moved for summary judgment, asserting that Dorsey is precluded by judicial estoppel from asserting that Officer Ruth used excessive force. This matter has been fully briefed and no hearing is necessary. *See* Local Rule 105.6. Because the court finds that Officer Ruth meets the test established by the Fourth Circuit for judicial estoppel, his motion for summary judgment will be granted.

*Background*

The core facts of this case are not disputed. On September 16, 1998 Dorsey led a number of police officers and state troopers on a high-speed chase. Finally, Dorsey ran into a telephone pole guide wire, and his vehicle, a stolen Isuzu Trooper, stopped. At this point officers surrounded his car with their weapons drawn.

At this point the parties produce different stories. In his complaint, Dorsey contends that once the officers surrounded his car, he asked for help and was then shot by Officer Ruth. (Comp. at 6.) Officer Ruth says that State Trooper Gruber was behind Dorsey's car, and was in danger of being backed into by Dorsey when Dorsey put his car in reverse and revved the engine. (Def.Mem.Ex.2.) Officer Ruth contends that only when it became clear that Trooper Gruber was in danger did he shoot Dorsey. (*Id.*)

On May 4, 1999, Dorsey entered a guilty plea in Baltimore County Circuit Court to assaulting a police officer and theft of a car. (Def. Mem. Ex. 1. at 2.) The factual basis of Dorsey's plea was, in part:

When [Dorsey] got off at Liberty Road, Your Honor, he then went off on a service road just one block south of the Beltway and cut across a front yard of a residence there. As he did so, his car went up on a guide wire to a telephone pole. At that point many of the police cars were around him, they had been in pursuit, surrounded him, exited their cars, at gunpoint told [Dorsey] to turn the engine off.

Trooper G[ruber] of the Maryland State Police Department got out of her unit and she came behind the vehicle. There was, the officers had formed a semicircle around the Isuzu Trooper. The Trooper was still hung up on the guide wire. Officer DeFelice was banging on one window saying turn the vehicle off. Officer Ruth was telling [Dorsey] to freeze, and Trooper G[ruber] had her weapon out and was telling [Dorsey] to stop. [Trooper Gruber] will testify that the driver of the vehicle made eye contact with her in the rear view mirror for the driver, the outside driver's mirror. And at this moment put the vehicle into reverse and floored it. The officer would tell you that the vehicle was spinning gravel from around the guide wire but it was hung up on a portion of the guide wire under the front axle and the vehicle could not immediately dislodge. At the moment this was happening, however, your Honor, Trooper G[ruber] was only approximately 10 to 15 feet behind the Isuzu Trooper. Had it engaged, your Honor, she clearly would have been in the path of the vehicle. And there were parked cars immediately to her left, as it would turn out she would have had a difficult time even getting out of the way of the Isuzu Trooper had it engaged and come back.

At this point, Your Honor, Officer Ruth fired two shots striking [Dorsey] once, I believe, in the neck and once in the shoulder. And at this point the vehicle, the gas became unengaged and, although the vehicle still was in the reverse position on the steering column. Your Honor, Trooper G[ruber] was in fear for her life. When [Dorsey] put it

in reverse she realized the reverse lights were on, she clearly would have been struck had the vehicle engaged properly and come backwards, particularly at the speeds they had been traveling up to this point.

(*Id.* at 16–17).

Officer Ruth contends that the facts of the shooting are the same as those contained in the factual basis for Dorsey's guilty plea. (Def.Mem.Ex. 2.) Officer Ruth filed a motion for summary judgment on December 21, 2001. Dorsey filed his response on April 2, 2002.

### Judicial Estoppel

Officer Ruth argues that Dorsey should be judicially estopped from arguing that the circumstances of his shooting were different from those in the statement of facts presented at his plea hearing.[1] (Def. Mot. at 2.). The Fourth Circuit has noted, "[j]udicial estoppel precludes a party from adopting a position that is inconsistent with a stance taken in prior litigation. The purpose of the doctrine is to prevent a party from playing fast and loose with the courts, and to protect the essential integrity of the judicial process." *Lowery v. Stovall,* 92 F.3d 219, 223 (4th Cir.1996) (*quoting John S. Clark Co. v. Faggert & Frieden, P.C.,* 65 F.3d 26, 28–29 (4th Cir. 1995)).

Indeed, the facts of Lowery are strikingly similar to the facts of this case. Lowery involved a § 1983 plaintiff who plead guilty to attacking an officer, yet maintained in his § 1983 action that the officer attacked him "for no reason." *Lowery,* 92 F.3d at 221–22. In the course of determining whether judicial estoppel applied in Lowery, the Fourth Circuit held that judicial estoppel applies when three criteria have been met. First, the party sought to be estopped must be advancing a factual position inconsistent with a factual position taken in earlier litigation. *Id.* at 224. Second, the prior factual statement "must have been accepted by the court." *Id.* Third, the party sought to be estopped "must have intentionally misled the court to gain unfair advantage." *Id.* (internal quotations omitted).

■ The court finds that Officer Ruth has met the three Lowery criteria. First, Dorsey's two contentions are both factual and inconsistent with one another. Dorsey asserts in his complaint that while his vehicle was on the guide wire, he asked the officers for help, at which point he was shot by Officer Ruth. (Complaint at 6.) In the factual basis for Dorsey's guilty plea, however, Officer Ruth fired at Dorsey only after Dorsey's Trooper was put in reverse and another officer was directly behind the vehicle. (Def. Mem. Ex. 1 at 16–17.) The court finds that Dorsey's statement in his plea agreement is inconsistent with his allegations in this suit. Further, these are factual, not legal, inconsistencies. For that reason, the first *Lowery* criterion is met.

The second *Lowery* criterion is also met. Dorsey's plea agreement was accepted by the court. (Def. Mem. Ex. 1 at 18.)

Finally, the third criterion is met as well. In *Lowery* the Fourth Circuit found that a party who had entered a guilty plea

---

1. The factual basis of the plea was presented to the court by the prosecutor in the presence of Dorsey. (Def. Mem. Ex. 1 at 13–18.) Thus, even though Dorsey did not, himself, state these facts expressly, they served as the factual basis for his guilty plea, and he is deemed to have ratified them by pleading guilty. *See Maryland v. Thornton,* 73 Md.App. 247, 533 A.2d 951, 956–57 (1987) (holding that a statement of facts underlying the offense is indispensable to the voluntariness of a plea). In addition, his counsel stated in Dorsey's presence that "we have no additions, corrections or deletions" to the statement of facts. (Def. Mem. Ex. 1 at 18.)

and then introduced an inconsistent statement in a later civil suit met this criterion. *Lowery*, 92 F.3d at 225. Lowery is indistinguishable from this case. As in Lowery, Dorsey's plea agreement conferred a benefit on him. *See id.* In exchange for his guilty plea, the State dropped two counts against Dorsey, and reduced a third from first degree assault to second degree assault. (Def. Mem. Ex. 1 at 2–3.) Dorsey cannot now assert facts which are inconsistent with his guilty plea in this civil suit.

Indeed, Dorsey would be judicially estopped from asserting any set of facts which differed from the facts agreed to in his plea agreement. Because Dorsey admitted in his plea agreement that he put Trouper Gruber in danger by backing his vehicle at her, and he is estopped from arguing anything inconsistent with such an assault, there is no "genuine issue of material fact," *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), as to whether Officer Ruth had justification for his use of force against Dorsey. For that reason, Officer Ruth's motion for summary judgment will be granted.

### Trooper Gruber's Statement

Dorsey argues that a statement made by Trooper Gruber is sufficient to defeat Officer Ruth's motion for summary judgment. In a memorandum dated September 16, 1998, Gruber states that she moved out of the path of Dorsey's vehicle before it began backing up. (Pls.Opp.Ex. 3.) Dorsey argues that this is sufficient to avoid summary judgment in Officer Ruth's favor because it creates a genuine issue of material fact.

The court disagrees for three reasons. First, as discussed *supra*, Dorsey is estopped from arguing anything inconsistent with the statement of facts presented at his plea hearing. Second, even if Dorsey were allowed to argue that the facts are as presented in Gruber's statement, it is not under oath, and when compared with Dorsey's admissions at his plea hearing and Officer Ruth's affidavit, is not sufficient to defeat summary judgment. Third, Gruber's statement is not inconsistent with a conclusion that Officer Ruth was justified in shooting Dorsey. Gruber states that she pulled the trigger on her weapon as Dorsey's vehicle began to back up, indicating that she also felt she was in danger. (Pls.Opp.Ex. 3.) Further, the time frame established by Gruber's statement does not clearly support Dorsey's position. Gruber says that "I . . . exited my vehicle intending to apprehend the suspects when the vehicle started to back-up and move directly towards my position. I moved out of the path of the vehicle and got to the rear of my vehicle." (*Id.*) If, as Gruber states, Dorsey's vehicle started moving toward Trooper Gruber, then Officer Ruth was justified in shooting Dorsey. For these reasons, Gruber's statement is not sufficient to defeat summary judgment.

### Qualified Immunity

▮ Although Officer Ruth did not raise the issue, he enjoys qualified immunity against Dorsey's suit. It is clearly established law that "a police officer's use of deadly force is not excessive where he has probable cause to believe that a suspect poses a threat of serious physical harm to the officer or others." *McLenagan v. Karnes*, 27 F.3d 1002, 1006–07 (4th Cir. 1994) (*citing Tennessee v. Garner*, 471 U.S. 1, 11, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)). Based on the factual circumstances established by Dorsey's guilty plea and Officer Ruth's affidavit, the court finds that a reasonable officer in Ruth's position could have believed that Dorsey posed a serious physical harm to Trooper Gruber and that his conduct in shooting Dorsey was therefore lawful.

Further, as the Fourth Circuit has noted, qualified immunity determinations "must embody allowances for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain and rapidly evolving-about the amount of force that is necessary in a particular situation." *Park v. Shiflett*, 250 F.3d 843, 853 (4th Cir.2001) (*citing Sigman v. Chapel Hill*, 161 F.3d 782 (4th Cir.1998)); *see also McLenagan*, 27 F.3d at 1007–08 ("We will not second-guess the split-second judgment of a trained police officer merely because that judgment turns out to be mistaken, particularly where inaction could have resulted in death or serious injury to the officer and others."). Under the law in the Fourth Circuit, Officer Ruth had qualified immunity.

For both of the reasons stated above, Officer Ruth's motion for summary judgment will be granted, and Dorsey's suit will be dismissed.

A separate Order follows.

### ORDER

For the reasons stated in the accompanying Memorandum, it is hereby **ORDERED** that:

1. The motion for summary judgment filed by Officer Ruth, docket number [15–1], is **granted;**

2. The Clerk shall send copies of this Order to the plaintiff and to counsel of record; and

3. The Clerk shall close this case.