159 F.3d 192
 78 Fair Empl.Prac.Cas. (BNA) 239,
74 Empl. Prac. Dec. P 45,569,
22 Employee Benefits Cas. 2063
Kermie M. KING, Plaintiff-Appellant,
v.
HERBERT J. THOMAS MEMORIAL HOSPITAL, a non-profit West
Virginia corporation, Defendant-Appellee.
 No. 97-1075.
 United States Court of Appeals,
Fourth Circuit.
 Argued March 2, 1998.
Decided Oct. 30, 1998.
 
 ARGUED: David Stephen Skeen, South Charleston, West Virginia, for Appellant. Charles MacKinley Surber, Jr., Jackson & Kelly, Charleston, West Virginia, for Appellee.
 Before ERVIN and NIEMEYER, Circuit Judges, and BROADWATER, United States District Judge for the Northern District of West Virginia, sitting by designation.
 Affirmed by published opinion. Judge NIEMEYER wrote the opinion, in which Judge ERVIN and Judge BROADWATER joined.OPINION
 NIEMEYER, Circuit Judge:
 
 
 1
 Kermie M. King's long-time employment as a dietary aide at the Herbert J. Thomas Memorial Hospital in South Charleston, West Virginia, was terminated on April 9, 1987, because she falsified her time card. Following her termination, King filed this action, claiming, among other things, that Thomas Memorial Hospital discriminated against her by reason of her age in violation of the West Virginia Human Rights Act. That Act requires King to establish that at the time of the defendant's allegedly discriminatory action, she was "able and competent to perform the services required" of her employment. W. Va.Code § 5-11-9(1).
 
 
 2
 In addition to filing this action, King applied for and was awarded disability benefits by the Social Security Administration, retroactive to one week before her discharge. Finding that King had represented to the Social Security Administration that she had a severe impairment that made her unable to do her previous work as of the time of her discharge, the district court granted summary judgment for Thomas Memorial Hospital on the grounds that King was judicially estopped from asserting that she was "able and competent" to perform her previous job, as required by West Virginia law.
 
 
 3
 Because we agree with the district court that King should be judicially estopped from maintaining that she was "able and competent" to perform her previous job and because, in addition, we conclude that she has failed to present sufficient evidence to show that she would not have been terminated "but for" her age, we affirm.
 
 
 4
 * King's employment as a dietary aide at Thomas Memorial Hospital required her to assist in such food production tasks as tossing salads and delivering food trays to patients. Before her discharge on September 9, 1987, she had worked in this capacity for 25 years.
 
 
 5
 King's employment at the hospital was regulated by published policies and an employee handbook. The six-page "Policy for Recording Time Worked and Instructions for Time Card Recording" included the following instruction, printed in all capitals and underlined: "RECORD THE ACTUAL TIME WHEN COMMENCING WORK AND THE ACTUAL TIME WHEN CONCLUDING WORK. (FALSIFICATION OF TIME CARD WILL RESULT IN TERMINATION )." Similarly, the employee handbook listed 30 offenses for which disciplinary action was specified, including "falsification of time card," for which the specified sanction for the first offense was discharge. King acknowledged that she had been aware of these policies before August 1987.
 
 
 6
 On August 28, 1987, King's immediate supervisor observed King leaving work at 2:20 p.m. and, a few minutes later, getting into her husband's car and exiting the hospital grounds. On her time card, King had signed out as of 2:30 p.m. King's supervisor and her department head subsequently counseled King, who acknowledged leaving early, and issued her a written warning. The warning noted that King's job responsibilities included "deliver[ing] all late trays up to 2:30 p.m." and that the department had "received several complaints about late trays not being delivered at this time." The warning further notified King that any additional occurrences would result in her suspension and would require her to check in with her supervisor before signing out each day.
 
 
 7
 On review of this written warning, the hospital's director of personnel questioned King about the incident. During the course of this interview, King acknowledged that she had left early on August 28, as well as on several other occasions. She also acknowledged that in each case she had falsified her time card. While King admitted that she knew of the hospital's time card policy and the mandated sanction for falsifying entries, she explained, "I felt others had done the same thing and that is why I did it." The director of personnel changed the sanction on the incident form to "discharge," as required by hospital policy, and then terminated King's employment.
 
 
 8
 On November 3, 1987, King filed an age discrimination claim with the West Virginia Human Rights Commission, alleging, "I was discriminated against because of my Age, 58, in that ... [d]ue to a reduction in Patient Census, the [hospital] reportedly plans to reduce the workforce by deleting certain positions." The Human Rights Commission investigated the charge, and on April 5, 1988, issued a finding of no probable cause to believe that Thomas Memorial Hospital had engaged in unlawful discrimination.
 
 
 9
 After her discharge, King also applied for Social Security disability benefits based on her physical condition which had manifested itself almost a year earlier. During the year before her discharge, King's doctor had written to Thomas Memorial Hospital on King's behalf, urging that the hospital provide King with a job where she was not required to spend eight hours a day on her feet because she was manifesting early symptoms of "talonavicular osteoarthritis." The hospital responded that it did not have any positions open at that time "that would limit the number of hours on her feet" but that jobs would be posted as they opened. In deposition testimony given in this case, King explained that she made her application for disability benefits because she had become "physically unable there at the hospital" or, as she corrected her statement, "Well, I guess it was after I was discharged from the hospital.... I guess it was about in '87, because my legs was giving me problems."
 
 
 10
 While the record does not contain King's application for Social Security disability benefits, the Social Security Administration awarded disability benefits to her in December 1988, determining that she had been disabled as of September 2, 1987, a week before the termination of her hospital employment. In its notice of award, the Social Security Administration explained that "[t]he decisions we made on your claim are based on information you gave us" and that these decisions were made by "doctors and other trained personnel." It also advised King that her health might improve and that therefore her case would be reevaluated in three years. King continues to receive Social Security disability benefits, as well as a pension for early retirement from Thomas Memorial Hospital.
 
 
 11
 After the West Virginia Human Rights Commission provided King with a right to sue notice, she filed this action in a West Virginia state court, and the hospital removed the case to federal court. In her amended complaint, King alleged (1) age-based employment discrimination in violation of the West Virginia Human Rights Act, (2) breach of contract, (3) intentional infliction of emotional distress, and (4) interference with retirement benefits in violation of the federal Employee Retirement Income Security Act (ERISA). The district court dismissed the last three counts because they were barred by the statute of limitations. On the age discrimination claim, the court applied judicial estoppel to bar King's assertion of a necessary element of her claim. The court concluded that King's "representation[s]" to the Social Security Administration concerning her disabled condition estopped her from maintaining her age discrimination claim, a claim which required her to prove that she was "able and competent to perform the services required" of her employment. W. Va.Code § 5-11-9(1). While King's application for Social Security benefits was not before the court, the court noted that in order to establish her Social Security claim, King had to represent that she had "a severe impairment that made her unable to do her previous work as of September 2, 1987." Moreover, the award itself indicates that it was based on information and medical evidence submitted by King. The court reasoned that King could not make the showing under the West Virginia Human Rights Act that she was "able and competent to perform the services required" and at the same time present a claim for disability benefits that she was "unable to perform her previous work," and noted, "[T]he circumstances of this case strongly suggest that plaintiff is merely 'blowing hot and cold as the occasion demands.' "
 
 
 12
 This appeal followed, challenging only the district court's entry of summary judgment against King on her West Virginia age discrimination claim.
 
 II
 
 13
 To establish a claim for unlawful age discrimination under West Virginia law, a claimant must demonstrate, among other matters, that she "is able and competent to perform the services required" of her employment with or without accommodation. W. Va.Code § 5-11-9(l ); see also Morris Memorial Convalescent Nursing Home, Inc. v. West Virginia Human Rights Comm'n, 189 W.Va. 314, 431 S.E.2d 353, 357-58 (1993). This requirement is consistent with the West Virginia Human Right Act's preference for injunctive relief and reinstatement. See W. Va.Code § 5-11-13(c). In this case, the district court determined that King was judicially estopped from satisfying the "able and competent to perform" requirement because she took the inconsistent position before the Social Security Administration that she was disabled and could not perform her previous job. The court inferred, based on the Social Security Administration's decision, that "plaintiff not only made the representation that she had a severe impairment that made her unable to do her previous work as of September 2, 1987, but that she also submitted medical evidence in support of that representation."
 
 
 14
 Challenging that ruling on appeal, King contends that the district court erred because it failed to recognize that a Social Security disability finding reflected not her inability to perform her job as a dietary aide, but rather her "unemployability due to her age, limited work skills, education, and incapability due to arthritic feet and legs." She argues that there is nothing factually or legally inconsistent about her asserting both that she was able to meet the requirements of her job at the time of her termination, as required under the West Virginia Human Rights Act, and also that she became disabled one week prior to her termination for purposes of receiving Social Security disability benefits.
 
 
 15
 Before addressing whether King in fact took inconsistent positions before the Social Security Administration and in her state discrimination claim in this case, we should review the applicable principles of judicial estoppel, upon which the district court relied.
 
 
 16
 Judicial estoppel, an equitable doctrine that prevents a party who has successfully taken a position in one proceeding from taking the opposite position in a subsequent proceeding, is recognized to protect the integrity of the judicial system. See Lowery v. Stovall, 92 F.3d 219, 223 (4th Cir.1996) (" 'The purpose of the doctrine is ... to protect the essential integrity of the judicial process' ") (quoting John S. Clark Co. v. Faggert & Frieden, P.C., 65 F.3d 26, 28-29 (4th Cir.1995)); McNemar v. Disney Store, Inc., 91 F.3d 610, 616 (3d Cir.1996) ("The doctrine ... serves a consistently clear and undisputed jurisprudential purpose: to protect the integrity of the courts"); DeGuiseppe v. Village of Bellwood, 68 F.3d 187, 191-92 (7th Cir.1995) ("[C]ourts are under no compulsion to heed the shifting theories of 'chameleonic litigants' "). Acting on the assumption that there is only one truth about a given set of circumstances, the courts apply judicial estoppel to prevent a party from benefiting itself by maintain ing mutually inconsistent positions regarding a particular situation. As we have previously observed, the doctrine is invoked to prevent a party from "playing fast and loose with the courts," from "blowing hot and cold as the occasion demands," or from attempting "to mislead the [courts] to gain unfair advantage." Lowery, 92 F.3d at 223, 225 (citations omitted). As an equitable doctrine, judicial estoppel is invoked in the discretion of the district court and with the recognition that each application must be decided upon its own specific facts and circumstances. See, e.g., McNemar, 91 F.3d at 617.
 
 
 17
 We have recognized the necessity of establishing at least three elements to apply the doctrine: (1) The party to be estopped must be asserting a position that is factually incompatible with a position taken in a prior judicial or administrative proceeding; (2) the prior inconsistent position must have been accepted by the tribunal; and (3) the party to be estopped must have taken inconsistent positions intentionally for the purpose of gaining unfair advantage. See Lowery, 92 F.3d at 224; John S. Clark Co. v. Faggert & Frieden, P.C., 65 F.3d 26, 29 (4th Cir.1995); Allen v. Zurich Ins. Co., 667 F.2d 1162, 1166-67 (4th Cir.1982). But judicial estoppel will not be applied where the party's inconsistent positions resulted from inadvertence or mistake. See Lowery, 92 F.3d at 224; Clark Co., 65 F.3d at 29.
 
 
 18
 In this case, West Virginia law requires King to establish as part of her age discrimination case that she was "able and competent" to perform the services required of her employment as a dietary aide at Thomas Memorial Hospital. The question presented, therefore, is whether she was properly estopped from establishing that element by reason of the position she took before the Social Security Administration in making a claim for disability benefits.
 
 
 19
 The record reveals that during the year before her discharge from the hospital, King was suffering from early stages of osteoarthritis, making it difficult for her to stand for long periods of time, as was necessary in performing her work as a dietary aide. The hospital advised her that it could not accommodate her claimed need to spend less time on her feet, but it suggested she could apply for a suitable position when one became available. Following her discharge in September 1987, King filed a claim with the Social Security Administration for disability benefits based on this disability, and the Social Security Administration awarded her benefits based on the information King provided, effective one week before her discharge.
 
 
 20
 The Social Security Administration's finding of disability necessarily meant that it had found, based on information supplied by King, that King was unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). More specifically, the Social Security Act directs that "[a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. 423(d)(2)(A) (emphasis added). The burden of proof lies with the claimant, who "shall not be considered to be under a disability unless [she] furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.... Objective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques ... must be considered in reaching a conclusion as to whether the individual is under a disability." 42 U.S.C. § 423(d)(5)(A).
 
 
 21
 King makes the argument that a Social Security Administration finding of disability could be based on a more general finding of unemployability due to her age, limited work skills, education, and incapacity due to her arthritic feet and legs. The age, skills, and education factors, however, relate only to whether King could engage in "any other kind of substantial gainful work which exists in the national economy." To award King disability benefits, the Social Security Administration would necessarily have had to conclude first that King was "unable to do [her] previous work," either because of a physical or a mental impairment.
 
 
 22
 Moreover, in this case, there is no mystery about the basis of King's disability. She explained in deposition the position she took before the Social Security Administration, testifying that she was disabled because of arthritis in her legs at the time of her discharge. She stated repeatedly that she was not "physically able to work," that "I really become physically unable there at the hospital," and that she became "unable to work from a physical standpoint ... after I was discharged from the hospital." In addition, even though the Social Security Administration's award to King provided for a review of her condition after three years, at the time of her deposition eight years after her discharge from the hospital, King was still receiving disability benefits.
 
 
 23
 The pertinent facts may thus be summarized: (1) King has taken the position before the Social Security Administration that she was physically unable to do her previous job as a dietary aide; (2) she claimed that she became so disabled around the time of her discharge in September 1987; (3) the Social Security Administration necessarily determined that she was "unable to do her previous work" at Thomas Memorial Hospital; (4) based on her representations, she benefited herself by obtaining from the Social Security Administration an award of disability benefits; and (5) she continues to assert under oath that she was disabled and she continues to receive disability benefits, which indicate that her position was deliberately and not inadvertently taken. Upon these facts, we agree with the district court that King is judicially estopped from asserting, as required for her West Virginia age discrimination claim, that she was "able and competent" to perform her previous work at the hospital at the time of her discharge. See W. Va.Code § 5-11-9(1). To allow King to obtain benefits from two sources based on two incompatible positions, simply because the positions aid her claims for remuneration, would reduce truth to a mere financial convenience and would undermine the integrity of the judicial process. In the factual circumstances of this case, we conclude that the district court was well within its discretion in applying judicial estoppel to preclude King from asserting a necessary element of her West Virginia age discrimination case.
 
 III
 
 24
 In addition to the requirement that King demonstrate that she was "able and competent" to work at her employment to prove an age discrimination case under West Virginia law, she must establish that "but for" her age (58), she would not have been fired. See Conaway v. Eastern Associated Coal Corp., 178 W.Va. 164, 358 S.E.2d 423, 429 (1986). To satisfy this requirement, and thereby shift the burden of production to the hospital, she would have to "show some evidence which would sufficiently link the employer's decision and the plaintiff's status as a member of a protected class so as to give rise to an inference that the employment decision was based on an illegal discriminatory criterion." Id. at 429-30 (footnote omitted); see also Barefoot v. Sundale Nursing Home, 193 W.Va. 475, 457 S.E.2d 152, 161 (1995) (explaining that "but for" test is "merely a threshold inquiry, requiring only that a plaintiff show an inference of discrimination").
 
 
 25
 The only evidence on this issue that King offered was a paper in longhand from her personnel file on which calculations were made in March 1987 showing that the amount of her pension at her early retirement date of May 1, 1987, was less than half of the pension that she would receive at her normal retirement date on May 1, 1994. King states that she did not request that information and that it was prepared without her knowledge. The inference she seeks to draw from the existence of these calculations is that the hospital discharged her six months later because it wanted to reduce its future pension liabilities.
 
 
 26
 We fail to appreciate how these calculations, made in March 1987, are linked through any evidence to the decision to fire King in September 1987. But even if this evidence shifted the burden to the hospital to produce a valid, nondiscriminatory reason for terminating King, see Conaway, 358 S.E.2d at 430, the hospital presented evidence that it discharged King for falsifying her time card on August 27, 1987, a fact that King admitted and which required, as a matter of preestablished policy, that she be discharged. When confronted with this evidence, King had to meet the ultimate burden of proving that the reason given by the hospital was "merely a pretext for discriminatory motive." Conaway, 358 S.E.2d at 430 (footnote omitted).
 
 
 27
 King argues that the affidavit of a former co-worker, which she offered in opposition to summary judgment, established that it was hospital policy to allow employees a "grace period" of five to seven minutes at the start and finish of each workday and that therefore there must have been some other reason for her discharge. This affidavit reported that the former employee had observed food production employees sign out and leave work five to ten minutes earlier than the scheduled quitting time, and stated that this grace period was provided as part of a "long standing formal and later informal hospital and dietary department policy." This affidavit, however, does not indicate that Thomas Memorial Hospital tolerated the falsification of time records. On the contrary, the evidence showed that the falsification of time records was a serious violation, requiring dismissal of the falsifying employee. Moreover, the hospital presented uncontradicted testimony that at least 15 other employees who had falsified their time records were discharged from their employment at the hospital, and only one of these other discharged employees was 40 years of age or older.
 
 
 28
 In short, we conclude that no reasonable jury could find that King's termination was the result of unlawful age-based discrimination on the part of the hospital.
 
 
 29
 For the reasons given herein, the judgment of the district court is hereby affirmed.
 
 
 30
 AFFIRMED.