Angela M. LAMONDS, Plaintiff,

v.

GENERAL MOTORS CORPORATION, Defendant.

No. 96–0067–C.

United States District Court, W.D. Virginia, Charlottesville Division.

Jan. 22, 1999.

---

Francis McQuaid Lawrence, St John, Bowling & Lawrence, Charlottesville, VA, Henry Duncan Garnett, Jr., Louisa, VA, for Angela M. Lamonds, plaintiff.

Bruce M. Steen, McGuire, Woods, Battle & Boothe, Charlottesville, VA, J. Brian Jackson, McGuire, Woods, Battle & Boothe, Charlottesville, VA, for General Motors Corp., defendant.

## MEMORANDUM OPINION

MICHAEL, Senior District Judge.

### INTRODUCTION

This case arises out of a one-vehicle automobile accident in which the driver, Angela Lamonds, was ejected through the rear window of her 1988 Chevy Spectrum. Ms. Lamonds was severely injured in the accident and suffered permanent brain damage. The plaintiff filed a motion for judgment in the Circuit Court for the County of Louisa, Virginia alleging negligent and defective design and sale of the Spectrum. The matter was subsequently removed to this court. The alleged defect as represented before this court to date is that when the driver puts on her seat belt, the seat belt can become wrapped around the seat back release lever such that in an accident the seat belt exerts force on the lever. This force causes the seat to recline which in turn allows the driver to slide out from under the seat belt and eject out of the rear window.

Currently before the court is the plaintiff's "Motion with Respect to Expert Testimony." Plaintiff essentially asks this court for an order to accomplish two things. First, plaintiff wishes to introduce a factually new theory of causation [1] by arguing that the structural weakness of the seat resulted in or contributed to plaintiff's ejection from the vehicle and her resulting injuries. Second, plaintiff seeks to include supplemental experts who will offer testimony about the permanent disability of the plaintiff. GM has not objected to the request to supplement experts related to Ms. Lamonds' disability and this court finds that request reasonable so long as GM is given a reasonable opportunity to depose the additional experts and conduct additional discovery in accord with the Federal Rules of Civil Procedure. GM, however, vigorously opposes plaintiff's attempt to introduce a new theory into the

---

1. The Plaintiff has made it clear to the court that she is not abandoning her original theory of causation. Plaintiff characterizes the new theory of causation as either contributing to the defect or as constituting the entirety of the defect.

Plaintiff's "Motion With Respect to Expert Testimony"; "Plaintiff's Reply to General Motors Supplemental Memorandum Regarding Expert Testimony" at 1-2.

case. For reasons discussed at length below, the court denies plaintiff's request to offer, in its case in chief, expert testimony and opinions as to the weakness of the seatback.[2]

## DISCUSSION

Angela Lamonds brought this action in August of 1996. For almost two and a half years the parties have inched toward trial. From August 1996 through October 1998, the plaintiff has advanced only one set of facts to support her theory of causation. Several rather cumbersome and somewhat arcane legal theories inform and serve as a basis for this court's decision. Though these theories operate differently, they each seek to ensure the integrity of the courts and recognize a district court's authority over the pre-trial and trial process.

### JUDICIAL ESTOPPEL

The plaintiff in this case has repeatedly asserted that her theory of the case centered on a very specific set of alleged facts. Ms. Lamonds argues that her model of the Chevy Spectrum has a design defect which permitted the seat belt to become wrapped around the seat back release lever. Plaintiff contends that in a collision tension is placed on the seat belt and this tension causes the release of the seat back lever such that the driver's seat becomes reclined. This reclining action permits the driver to be ejected during the accident.[3] Though the plaintiff's complaint alleges a general design defect in the seat, the entire two-plus year history of this case has narrowed the defect down to the seat belt theory. Perhaps more importantly, plaintiff's lawyers have specifically relied on this set of facts to support their theory of causation on multiple occasions and have led the court and defendant to believe that the seat belt theory is the only theory involved in this case. On at least one occasion plaintiff represented to United States

Magistrate Judge B. Waugh Crigler that plaintiff would not introduce theories of causation grounded in a new factual basis.[4]

The plaintiffs now seek to file supplemental reports for their two experts (Bloch and Greene) that "clarify the position of each that the strength, or lack of strength, of the driver-side front seat back is a defect which caused or contributed proximally to Lamonds' injury." Plaintiff's Memorandum in Support of Expert Testimony Expansion at 2. Plaintiff's disingenuously argue that the "seat back strength issue has been 'in the case' since the beginning." *Id.* To support this assertion, which verges on an actual misrepresentation, plaintiff points to deposition testimony of its two experts. While both Bloch and Greene make reference to the fact that the seat was "deformed" in the accident, plaintiff fails to explain to the court that this testimony about deformation is in response to a defense that GM may raise in this case. That defense essentially is that the seat is designed to deform backward in certain types of collisions, that this deformation is a safety design which adheres to federal law, and that this design explains why the seat was found reclined in a rearward position after the accident.

 Judicial estoppel is a judge made doctrine and it has been applied in wildly different ways by the courts. More lofty courts readily concede that they have difficulty in formulating a specific test for determining when judicial estoppel should be applied. *Lowery v. Stovall*, 92 F.3d 219 (4th Cir.1996) (*citing Patriot Cinemas, Inc. v. General Cinema Corp.*, 834 F.2d 208, 212 (1st Cir.1987)); *Allen v. Zurich Insurance Company*, 667 F.2d 1162 (4th Cir.1982) ("The circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle . . .").

---

2. Should GM raise this issue or otherwise "open the door" during the course of trial, the court will revisit the issue.

3. Hereinafter referred to as the "seat belt theory."

4. In a May 13, 1998 summary judgment hearing before Judge Crigler, plaintiff relied solely on the seat belt theory and when Judge Crigler inquired about additional theories that the plaintiff might later try to introduce, the plaintiff specifically stated that she would not introduce a theory other than the seat belt theory. In reliance on this representation, Judge Crigler recommended to this court that GM's summary judgment motion be denied. This court, considering only the seat belt theory, reviewed Judge Crigler's recommendation and held in plaintiff's favor, denying summary judgment to GM.

Judicial estoppel precludes a party from adopting a position that is inconsistent with a stance taken in prior litigation. *John S. Clark Co. v. Faggert & Frieden, P.C.*, 65 F.3d 26, 28–29 (4th Cir.1995). In determining the doctrine's applicability, a consideration of the policy behind judicial estoppel is important. Judicial estoppel is invoked to prevent a party from "playing fast and loose with the courts;" it is designed to protect the integrity of the courts and the judicial process. *King v. Herbert J. Thomas Memorial Hospital*, 159 F.3d 192 (4th Cir.1998); *Lowery*, 92 F.3d at 223. The Fourth Circuit has stated that the doctrine involves three basic elements:

> (1) The party to be estopped must be asserting a position that is factually inconsistent with a position taken in a prior judicial or administrative proceedings; (2) the prior inconsistent position must have been accepted by the tribunal; and (3) the party to be estopped must have taken inconsistent positions intentionally for the purpose of gaining unfair advantage.

*King*, 159 F.3d at 196; *Lowery*, 92 F.3d at 224.

■ Judicial estoppel must be applied with caution and in the narrowest of circumstances. *See, e.g., Faggert & Frieden*, 65 F.3d at 29; *Lowery*, 92 F.3d at 224.

■ With these principles in mind, the court must consider whether the doctrine of judicial estoppel should be applied in this case. The facts underlying the first theory of causation and the newly advanced theory are highly technical and somewhat scientific. Technical, scientific facts often intimidate courts into making safe, deferential decisions. Courts, however, have a duty to confront these issues and attempt to correctly apply the law. The plaintiff has stated in her pleadings related to this issue that the new factual basis for her theory of causation may either have contributed to or caused her to be ejected. The court finds this sort of hedging troublesome. As the court under-

stands the theories, they are distinct and unrelated in any consequential way. Moreover, the theories are factually incompatible with one another. For the sake of convenience, the court will refer to the two theories as the seat belt theory and the weak seat theory.

The strength of the seat is the issue central to the weak seat theory and the positioning of the seat back release lever is central to the seat belt theory. The strength of the seat back is irrelevant to the seat belt theory. The seat will recline immediately when the handle of the recliner mechanism is lifted by the seatbelt webbing. Plaintiff's experts have consistently stated in their depositions that Ms. Lamonds was ejected out of the car because "the backrest release lever is a lethal design whereby the lap belt can trigger that release lever and eject the person out of the vehicle ..." Deposition of Byron Bloch, April 9, 1998, page 107. Plaintiff now argues (at least in part), however, that the seat back first deformed and that the movement of her body following this deformation resulted in the tension on the seatbelt webbing that caused the seat back lever to be triggered. The plaintiff states that this formulation of events is supported by her experts. A careful review of the deposition testimony of Bloch and Green does not support this newly advanced scenario where the weak seat theory and the seat belt theory work in tandem. More important for purposes of this court's analysis is that these two theories as articulated by the plaintiff and her experts are inconsistent and cannot work in tandem. Either the movement of the plaintiff caused by forces exerted during the accident caused the seat belt to tense resulting in the release of the seat back lever which in turn caused the seat to recline and eject the plaintiff; or, the seat deformed rearward because of forces exerted during the accident and this resulted in the plaintiff's ejection[5]. The two factual bases underlying the plaintiff's theory of cau-

---

**5.** This court is virtually certain that some physicist or engineer somewhere could examine the facts and arrive at a different conclusion and is likewise certain that there would be many experts who would concur in this court's conclusion. As a district court faced with competing demands of moving a case toward trial and try-

ing to reach fair, correct decisions, this court does not have the luxury of conducting mini-trials each time a party raises a difficult technical issue and must, therefore, make a decision based on the information and argument before the court.

sation are inconsistent and as such the first requirement of judicial estoppel is met in this case. Having found that the two theories are inconsistent, the court must determine whether the seat belt theory has been accepted by a tribunal in a prior judicial proceeding.

On May 13, 1998 a summary judgment hearing was held in this matter before United States Magistrate Judge B. Waugh Crigler. Plaintiff's attorneys represented to Judge Crigler that their sole theory of causation was based on the seat belt theory. Because of this understanding of the case, Judge Crigler recommended to this court that GM's summary judgment motion be denied. This court concurred in that recommendation. There can be no doubt that the summary judgment proceeding constitutes a prior judicial proceeding and that the seat belt theory was accepted and relied upon by both Judge Crigler and this court. The Fourth Circuit has clearly held that the doctrine of judicial estoppel bars parties from prevailing as a result of inconsistent positions and representations made in a proceeding during the course of the same litigation. *Zurich Insurance Co.*, 667 F.2d at 1166 (4th Cir.1982); *United States v. 198.73 Acres of Land*, 800 F.2d 434, 436 (4th Cir.1986); *Federal Deposit Insurance Corp. v. Jones*, 846 F.2d 221, 234 (4th Cir.1988).[6]

Establishing that plaintiff has taken this new position "intentionally" does not require some sort of smoking gun type proof of intent. The inquiry for this third element focuses on whether the party is truly attempting to persuade the court to accept two inconsistent positions so as to gain unfair advantage. That is, are the positions clearly contradictory. *See, e.g.*, Eric A. Schreiber, *The Judiciary Says, You Can't Have it Both Ways: Judicial Estoppel—A Doctrine Precluding Inconsistent Positions*, 30 Loy. L.A.L.Rev. 323 (1996). The Fourth Circuit's decision in *Lowery* is especially instructive on this issue. 92 F.3d 219 (4th Cir.1996). In *Lowery*, the plaintiff brought a Section 1983 action for injuries sustained when he was

shot by a police officer. *Id.* at 225. After bringing the civil suit, the plaintiff pled guilty and the Fourth Circuit held that this plea precluded the plaintiff from arguing that he did not maliciously attack the police officer. The court reasoned that after receiving the benefit of a plea, Lowery then wanted to have it the other way and argue that he did not attack the officer. *Id.* Here the plaintiff received the benefit of making it past summary judgment and did so by representing one, consistent theory of causation. Now, having received the benefit of the court's prior denial of summary judgment, the plaintiff wishes to proceed to trial by advancing a new, inconsistent set of facts as the basis for her theory of causation. This sequence of events convinces the court that adoption of the new set of facts underlying the weak seat theory was intentional and not inadvertent or a mistake.

The foregoing analysis leads the court to the conclusion that it is appropriate for the court to exercise the discretion afforded by the doctrine of judicial estoppel and preclude Ms. Lamonds from raising the weak seat theory in her case-in-chief. Though the court believes that judicial estoppel provides a sufficient basis for the preclusion of the weak seat theory in this case, the court's decision is also informed by the doctrine of judicial admission and by the inherent authority and discretion vested in this court to manage pre-trial and trial matters in civil litigation.

### JUDICIAL ADMISSION & TRIAL COURT DISCRETION

██ Admissions and stipulations made by counsel before a court can have a binding effect on parties and preclude conduct that is inconsistent with the prior statements. *United States v. Blood*, 806 F.2d 1218 (4th Cir.1986). This court has held that in the course of a bankruptcy proceeding where a bank files a pleading with the court conceding corporate ownership of property, that concession becomes a "judicial admission" and as such may be relied upon by the court. *Leake v. Bank of Rockbridge*, 1993 WL

---

6. The court also notes that in granting plaintiff's request for a continuance, this court relied on the representations of Mr. Garnett that additional time was necessary to discover information related to the seat belt theory.

171744 (W.D.Va.) (Michael, J.). The doctrine of judicial admission works to protect the judicial process. That process depends on the representations made by counsel. *EF Operating Corp. v. American Buildings*, 993 F.2d 1046, 1050 (3rd Cir.1993). The plaintiff's lawyers have expressly stated to this court that they were pursing only the seat belt theory. Stating that one plans to rely on only one set of facts to support a theory of causation necessarily means that one is representing that he will not rely on another set of facts. This court has considered and denied a summary judgment motion based upon these representations, has granted a continuance within days of trial based on this representation, and has addressed other matters in the march toward trial based on this representation. The plaintiff argues that the doctrine of judicial admission can be applied only to constitute an admission by the plaintiff that may be offered into evidence. The caselaw provides little guidance on this issue and the plaintiff's position appears to be a logical understanding of the law. Plaintiff's argument, however, ignores that the general policy underlying the doctrine of judicial admission is protection of the judicial process. Considering this policy and the ambiguity in the caselaw, it seems most appropriate that a district court should examine the facts before it and determine whether the admission should bind the admitting party to his original position or whether the original position should merely be admitted into evidence against the party. The court does not need to resolve this potentially thorny issue because the doctrine of judicial admission is but one policy supporting this court's rationale and the court believes that the doctrine's ultimate policy is served by this decision.

■ Finally, plaintiff argues that the Federal Rules of Civil Procedure permit her to introduce a new factual basis for her theory of causation and to do so through supplementation of her expert testimony. The plaintiff refers this court to several cases from the First Circuit. *Williams v. Monarch Machine Tool Company*, 26 F.3d 228 (1st Cir. 1994); *Newell Puerto Rico, Ltd. v. Rubbermaid*, 20 F.3d 15 (1st Cir.1994); *Johnson v. H.K. Webster*, 775 F.2d 1 (1st Cir.1985). None of these cases address the competing interest of the Federal Rules of Civil Procedure and the doctrines of judicial estoppel and judicial admission. The Federal Rules of Civil Procedure in part work to ensure that civil trials seek out the truth. This important goal is served by ending trial by ambush and liberally permitting the entrance of newly discovered evidence into the litigation process. This trial is scheduled to begin April 5, 1999. Though introduction of the weak seat theory falls somewhat short of trial by ambush, given the two plus years spent preparing for trial, this court is of the opinion that permitting the new theory does not serve the goals of the Federal Rules of Civil Procedure. As discussed above, the doctrines of judicial estoppel and admission attempt to protect the integrity of the court and the judicial process. At times the policies advanced by the Federal Rules and the estoppel doctrines will clash. This court is vested with the discretion and authority to resolve these matters and must do so after carefully considering the totality of the circumstances. Having carefully considered the plaintiff's motion and the myriad of legal issues which surround it, the court feels compelled to concur with GM's objection and deny plaintiff's request to supplement their expert witness testimony related to the weak seat theory.

## CONCLUSION

The court is aware that the preclusion of plaintiff's new theory is a harsh result. The court has reached its conclusion after a careful consideration of all of the circumstances and facts surrounding the issue and after a careful review of the law. Should defendant GM raise the weak seat theory, this court will revisit the issue and, assuming that the "door is opened," can foresee no basis for preventing Ms. Lamonds from presenting appropriate rebuttal evidence on the issue.

An appropriate order shall this day issue.