Ruth L. HENDERSON, Plaintiff,

v.

COLUMBIA NATURAL RESOURCES,
et al., Defendants.

Civil Action No. 2:98–0447.

United States District Court,
S.D. West Virginia,
Charleston Division.

April 7, 1999.

Theodore R. Dues, Jr., Charleston, WV, Sharon M. Mullens, Charleston, WV, for plaintiff.

William E. Robinson & Michael A. Kawash, Robinson & McElwee, Charleston, WV, for defendant.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending is Defendants' motion for summary judgment, which is ripe for review. After careful consideration, the Court **GRANTS** the motion.

## I. FACTUAL BACKGROUND

Mindful of the summary judgment standard, the Court construes all facts and reasonable inferences in favor of Plaintiff.

In November 1990, when she was fifty-four years old, Plaintiff Ruth Henderson, an African–American female, was hired by Defendant Columbia Natural Resources ("CNR") as a secretary in its Law Department. In late 1990, CNR created a new position, Human Resources Specialist, that provided clerical and administrative support to Ben Blackwell, the placement and equal employment opportunity manager. Of five applicants, Henderson was hired.

Henderson's position was at the same hierarchical level as that held by Beth Mallory, a younger, Caucasian woman, who provided support for Carl Smith, manager of compensation and benefits. Employed in the HR department since March 1990, Mallory originally provided the clerical support for both Smith and Blackwell. When the position was split, Mallory chose to work with Smith.

In February 1995, in a cost-savings effort, HR Department Manager Edison Casto recommended to CNR President John Henning that CNR restructure the HR Department. Blackwell's position would be eliminated, and Mallory and Henderson would receive promotions to exempt administrator positions.

Before a decision could be made on Casto's recommendation, CNR implemented a reduction in force ("RIF"), eliminating thirty-nine positions, due to its "dire financial situation." Casto Dep. at 158–59, Ex. A, Defs.' Mot. Summ. J. ("Defs.' Mot.") Blackwell and Casto announced their resignations, as did CNR's President Henning. Afterwards, the proposed restructuring was implemented. Henderson was promoted to Placement and EEO Administrator; Mallory was promoted to Compensation, Benefits/HRIS Analyst.

In March 1996 CNR's new president, Henry Harmon, determined a second RIF was necessary as a "continuation of the downsizing accomplished in 1995."[1] Memorandum at 1, Ex. K, id. In a March 26, 1996 memorandum, Harmon set forth the scope and criteria to be used in selecting the employees to be terminated. Harmon himself identified the "surplus positions" based on "redesign of basic business processes" or "work compression / redefinition."[2] Id. at 2. If a single employee occupied a surplus position, the employee was terminated. Id. at 3.

Using these criteria, Harmon determined Henderson's position would be eliminated and, as the only person in that position, Henderson would be terminated. Harmon states his determination was not

---

1. The memorandum further stated, "At that time [the 1995 RIF], employees were advised that a second RIF would be announced in the Spring of 1996 completing this process" although the second RIF had not been included in CNR's 1996 Strategic Plan. Ex. K, Defs.' Mot. Casto and Smith maintain, however, they were unaware of the possibility of a second RIF before Harmon's announcement. Ex. A at 158 and Ex. D at 47–48, id.

2. The HR Department reviewed all of Harmon's RIF recommendations "for consistency with the overall strategy, any adverse or unconscionable consequences, and linkages within the redesigned organization." Ex. K at 2, Defs.' Mot.

based on Henderson's age, race, performance or abilities. Harmon Aff., Ex. J, *id.* Another twenty employees were terminated as part of the RIF, all of whom were white and younger than Henderson.[3] After Henderson's termination, her duties were distributed among several others, including Mallory, Smith, and an outside contractor.

Henderson alleges she was discriminated against on the basis of her race and age. She contends CNR and Casto gave preferential training opportunities[4] and high visibility assignments to Mallory but not Henderson.[5] Further, she alleges Defendants promoted her to a position they anticipated would be eliminated in the second RIF.

On May 13, 1996 Henderson filed a charge of discrimination with the federal EEOC, contending she was discriminated against in violation of Title VII and ADEA. On September 30, 1996 EEOC issued a Dismissal and Notice of Rights. On November 13, 1997 Henderson filed her complaint alleging violations of the West Virginia Human Rights Act ("WVHRA") and Title VII in the Circuit Court of Kanawha County, West Virginia. On May 22, 1998[6] Defendants removed to this Court on the basis of federal question jurisdiction.

## II. DISCUSSION

### A. Summary Judgment Standard

Our Court of Appeals has often stated the settled standard and shifting burdens governing the disposition of a motion for summary judgment:

> Rule 56(c) requires that the district court enter judgment against a party

who, "after adequate time for ... discovery fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." To prevail on a motion for summary judgment, the [movant] must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) it is entitled to judgment as a matter of law. In determining whether a genuine issue of material fact has been raised, we must construe all inferences in favor of the [nonmovant]. If, however, "the evidence is so one-sided that one party must prevail as a matter of law," we must affirm the grant of summary judgment in that party's favor. The [nonmovant] "cannot create a genuine issue of fact through mere speculation or the building of one inference upon another." To survive [the motion], the [nonmovant] may not rest on [his] pleadings, but must demonstrate that specific, material facts exist that give rise to a genuine issue. As the *Anderson* Court explained, the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff[.]"

*Harleysville Mut. Ins. Co. v. Packer,* 60 F.3d 1116, 1119–20 (4th Cir.1995) (citations omitted); *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.), *cert. denied,* 513 U.S. 813, 115 S.Ct. 67, 68, 130 L.Ed.2d 24 (1994); *see also Cabro Foods, Inc. v. Wells Fargo Armored Serv. Corp.,* 962 F.Supp. 75, 77 (S.D.W.Va.1997); *Spradling v. Blackburn,* 919 F.Supp. 969, 974 (S.D.W.Va.1996).

"At bottom, the district court must determine whether the party opposing the

---

**3.** Henderson alleges disparate treatment, not disparate impact.

**4.** Henderson acknowledges CNR and her earlier employer paid for her college education. Henderson Dep. at 8, Ex. E, Defs.' Mot.

**5.** Evidence shows the opportunities Mallory received were directly related to Mallory's work. Furthermore, Mallory did not receive

any training in Henderson's work. Stover Dep., Ex. U at 16, Defs.' Reply Memo. The work divisions were determined prior to and maintained consistently from Henderson's hiring.

**6.** Defendants were served with process on April 29, 1998.

motion for summary judgment has presented genuinely disputed facts which remain to be tried. If not, the district court may resolve the legal questions between the parties as a matter of law and enter judgment accordingly." *Thompson Everett, Inc. v. National Cable Advertising, L.P.,* 57 F.3d 1317, 1323 (4th Cir.1995).

## B. Title VII Claim

▆ In *Count* 3 Henderson alleges Defendants violated her rights under the Civil Rights Act of 1991, which is treated as a Title VII claim. Henderson's claim fails, however, because she did not file her complaint within 90 days of receiving her Notice of Right to Sue. 42 U.S.C. § 2000e–5(f)(1). The Right to Sue notice was dated September 30, 1996, but Henderson did not file her complaint until November 13, 1997. Accordingly, *Count* 3 is untimely. Henderson offers no argument to oppose this. The Court **GRANTS** Defendants' motion for summary judgment on this claim.[7]

▆ Because a common nucleus of operative fact underlies all of Plaintiff's claims such that they are so "so related ... that they form part of the same case or controversy," 28 U.S.C. § 1367(a), the Court exercises supplemental jurisdiction to address Plaintiff's remaining claims. *See City of Chicago v. Int'l College of Surgeons,* 522 U.S. 156, ——— ———, 118 S.Ct.

523, 529–30, 139 L.Ed.2d 525 (1997); *Shanaghan v. Cahill,* 58 F.3d 106, 109 (4th Cir.1995); *Sayre v. Potts,* 32 F.Supp.2d 881, 889 (S.D.W.Va. Jan.8, 1999) (Goodwin, J); *Clark v. Milam,* 813 F.Supp. 431, 435 (S.D.W.Va.1993) (Haden, C.J.).

Although the federal claim has been dismissed, *see* 28 U.S.C. § 1367(c)(3), the Court elects not to remand the case. Because it is more convenient for the parties and witnesses to have the claims heard in one forum, because the state law issues are not novel or complex, and because the action has progressed substantially in this forum, the Court exercises jurisdiction over the remaining state law claims.

## C. West Virginia Human Rights Act Claim

Defendants argue Henderson's claim regarding loss of training and high visibility opportunities is untimely because the complaint was filed more than two years after the last alleged instance of discrimination. Even if Plaintiff could overcome this procedural hurdle, her WVHRA claim nonetheless fails substantively.[8]

▆ To prove a claim under WVHRA, a plaintiff first must establish a prima facie case. *Barefoot v. Sundale Nursing Home,* 193 W.Va. 475, 483, 457 S.E.2d 152, 160 (1995) (citing, *inter alia, St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Texas Dep't*

---

**7.** Filing within ninety days after the Notice of Right to Sue is not jurisdictional. *Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345, 350 n. 3, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983) (citing *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982)); *see also* Lex K. Larson, *Employment Discrimination* § 74.03 (2d ed.1995). Instead, the requirement is treated like a statute of limitations that is subject to equitable tolling. *See Zipes,* 455 U.S. at 393, 102 S.Ct. 1127; *see also Seitzinger v. Reading Hosp. and Medical Center,* 165 F.3d 236 (3rd Cir.1999); *Truitt v. County of Wayne,* 148 F.3d 644, 646 (6th Cir.1998) (listing cases so holding).

Here, Henderson has offered no facts that would warrant equitable tolling under *Harvey v. City of New Bern Police Dept.,* 813 F.2d 652, 654 (4th Cir.1987). Because the requirement

is not jurisdictional, however, the Court may consider exercising supplemental jurisdiction.

**8.** As an initial matter, the Court notes Henderson failed to offer a single exhibit to her responsive memorandum, although she excerpted portions of deposition testimony in the body of the memorandum. Although the Court considers this a dangerously casual response to an important motion, *see Harleysville Mut. Ins. Co. v. Packer,* 60 F.3d at 1119–20 ("To survive [the motion], the [nonmovant] may not rest on [his] pleadings, but must demonstrate that specific, material facts exist that give rise to a genuine issue."), the Court grants summary judgment only after fully considering the evidence in the light most favorable to Plaintiff.

*of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). The defendant must then proffer a legitimate, nondiscriminatory reason for its allegedly discriminatory action. *Id.* If the defendant puts forward a legitimate, non-discriminatory reason, the plaintiff must demonstrate the defendant's reason is merely pretextual and the adverse action was motivated, in fact, by a discriminatory purpose. *Id.*

■ To state a prima facie case of employment discrimination, the plaintiff must prove: "(1) That the plaintiff is a member of a protected class; (2) That the employer made an adverse decision concerning the plaintiff; (3) But for the plaintiff's protected status, the adverse decision would not have been made." *Conaway v. Eastern Associated Coal Corp.,* 178 W.Va. 164, 170, 358 S.E.2d 423, 429 (1986) (*cited in Southern v. Emery Worldwide,* 788 F.Supp. 894, 897 (S.D.W.Va.1992) (Haden, C.J.)); *Heston v. Marion County Parks and Recreation Comm'n,* 181 W.Va. 138, 141, 381 S.E.2d 253, 256 (1989). "The 'but for' test of discriminatory motive in *Conaway v. Eastern Associated Coal Corp.,* 178 W.Va. 164, 358 S.E.2d 423 (1986), is merely a threshold inquiry, requiring only that a plaintiff show an inference of discrimination." *Barefoot,* 193 W.Va. at 484, 457 S.E.2d at 161. "What is required of the plaintiff is to show some evidence which would sufficiently link the employer's decision and the plaintiff's status as a member of a protected class so as to give rise to an inference that the employment decision was based on an illegal discriminatory criterion." *Conaway,* 178 W.Va. at 170–71, 358 S.E.2d at 429–30 (*cited in Barefoot,* 193 W.Va. at 484, 457 S.E.2d at 161).

West Virginia case law reveals some confusion regarding the precise formulation of the prima facie case following *Conaway* and *Barefoot.* The Supreme Court of Appeals has been precise, however, in stating that the West Virginia test follows the federal test. *See Barefoot,* 193 W.Va. at 482, 457 S.E.2d at 159 ("We have consis-

tently held that cases brought under the West Virginia Human Rights Act, W.Va. Code, 5–11–1, *et seq.,* are governed by the same analytical framework and structures developed under Title VII, at least where our statute's language does not direct otherwise."). Moreover, the law is clear that the basic inquiry in discrimination cases is whether the facts give rise to a reasonable inference of discrimination.

■ Here, Henderson, an African–American aged 62, has shown she is a member of two protected classes. She has shown she was not given some training and opportunities, and she was terminated after her position was eliminated. However, construing all facts and reasonable inferences in favor of Henderson, they nonetheless fail to support a reasonable inference of discrimination.

In her deposition, Henderson could not and did not say the denial of training and opportunities were the result of discrimination. When questioned about the motive behind the denials, she answered, "I just felt it was a missed opportunity at the time," Ex. E at 78, Defs.' Mot. *See also id.* at 80, 82, 84, 111. When pressed further as to whether the opportunity was missed because of her age or race, she said, "I don't know how I feel about that right now," *id.* at 92. At the end of her deposition, she again confirmed that she didn't know how she felt about whether age or racial discrimination was involved. *Id.* at 141.

Similarly, Henderson's witnesses provide little support. In affidavits, Blackwell and other department employees confirm that Henderson was not given some training and opportunities. Pl.'s Resp. to Interrogs., Ex. O., Defs.' Mot. In depositions, however, each witness stated the treatment was not based on Henderson's age or race. *See* Blackwell Dep., Ex. C at 58–59, *id.;* Ernest Gregory Claytor Dep., Ex. P at 11, *id.*

Similarly, two witnesses appear to support Henderson's theory in affidavits by

characterizing the treatment as "discriminatory," *see* Pl.'s Resp. to Interrogs., Ex. O, *id.* (Keenan and Burdette affidavits), but in depositions, they demonstrate otherwise. Specifically, Nancy Keenan testified she has no knowledge or information that leads her to conclude there was racial or age discrimination. Ex. Q at 11, *id.* Patricia Burdette also testified that she had no specific facts or information to support the claim of racial or age discrimination. Ex. R at 39, *id.* Burdette explained further she felt Mallory was given preferential treatment even over the treatment she, a Caucasian female under forty when the favoritism began, received.[9] *Id.* at 22–23, 27–28, 39–40.

Similarly, there is no evidence to support an inference of discrimination concerning Henderson's termination. The restructuring of the HR department was proposed first in February 1995, months before the first RIF took place. Even if the second RIF had been anticipated in 1995, as Henderson alleges and as Harmon's February 1996 memorandum tends to support, the decisions concerning the second RIF were made and carried out by Harmon alone. Henderson does not contest that Harmon was a neutral decisionmaker, untainted by Casto's alleged discriminatory animus toward Henderson, because Harmon became President only a few months before the second RIF.

In sum, there is no evidence to support a reasonable inference of age or race discrimination. *See King v. Herbert J. Thomas Memorial Hospital,* 159 F.3d 192, 198–99 (4th Cir.1998) (affirming summary judgment because plaintiff failed to establish prima facie case of age discrimination, but even if she did, defendant established legitimate, non-discriminatory reasons); *McDonald v. Cabot Corp.,* 914 F.Supp.

1356, 1359 (S.D.W.Va.1996) (granting summary judgment because plaintiff failed to state a prima facie case of age discrimination under WVHRA), *aff'd,* 121 F.3d 699 (4th Cir.1997).

Moreover, even if Henderson had stated a prima facie case, Defendants have offered evidence of a "dispositive, nondiscriminatory reason as to which there is no real dispute and which no rational trier of fact could reject." *See Barefoot,* 193 W.Va. at 487, 457 S.E.2d at 164. The second RIF was planned and carried out under a neutral and objective plan. Harmon was not called upon to consider anyone's relative merits or education, much less their race or age. Instead, the decisions were made wholly on the basis of what positions could be eliminated by compression and sharing of work. No one at any point chose to terminate Henderson in comparison with another person. Instead, Harmon chose to eliminate the position of Placement and EEO Administrator. Because Henderson was the only occupant of that position, she was terminated. Plaintiff has not offered evidence to demonstrate Defendants' reason was pretextual. Examining all facts and evidence, there is no evidence from which a jury could reasonably find for Plaintiff. Consequently, the Court **GRANTS** Defendants' motion for summary judgment.[10]

### III. CONCLUSION

Accordingly, the Court **GRANTS** Defendants' motion for summary judgment and **ORDERS** this case **DISMISSED** and **STRICKEN** from the docket.

9. Considering all facts and evidence, Burdette's statement is a clear account of the office politics involved here. Mallory was preferred over all employees, not simply Henderson. Henderson was not discriminated against because of her age or race; she and others were treated less preferentially simply because they were not Mallory.

10. Because Plaintiff fails to state a prima facie case of discrimination, neither CNR nor Casto can be held liable.