Mark **ROGERS, Eric Pelcher and Mark Emigh, Plaintiffs–Appellants,**

v.

**CITY OF AMSTERDAM, Thomas McQuade, and Todd Stark, Defendants–Appellees,**

**Mary Ann Smith, Defendant.**

**Docket No. 01–7893.**

United States Court of Appeals, Second Circuit.

Argued: June 21, 2002.

Decided: Sept. 06, 2002.

Frederick W. Killeen, Schenectady, NY, for Plaintiffs–Appellants Mark Rogers, Eric Pelcher, and John M. Emigh.

Carrie McLoughlin, Pennock & Breedlove, LLP, Clifton Park, NY, for Defendants–Appellees Todd Stark.

Before McLAUGHLIN, CALABRESI, and B.D. PARKER, Circuit Judges.

McLAUGHLIN, Circuit Judge.

Plaintiffs Mark Rogers, Eric Pelcher and John Emigh appeal the district court's grant of summary judgment to the defendant Police Officer Todd Stark. We agree with the district court that Officer Stark was entitled to qualified immunity from the claims of both Rogers and Emigh; but we rule that summary judgment was inappropriate with respect to Pelcher. In addition, we rule that plaintiff Pelcher has constructively satisfied the favorable termination element of a claim for malicious prosecution.

## BACKGROUND

Plaintiff Mark Rogers owned the James Street Wash and Dry, a laundromat located in Amsterdam, New York. In February 1998, the City of Amsterdam, in a tax foreclosure, acquired title to the building in which the laundromat was located. Later that month, the City padlocked the laundromat and City Comptroller Kim Brumley notified plaintiff Eric Pelcher, who managed the laundromat for Rogers, that the City wished to terminate Rogers' lease. The City also wanted Rogers to vacate the building before an auction of the property scheduled for the end of March 1998 and Rogers agreed.

Brumley furnished Pelcher with a set of keys to the building so that equipment could be removed from the laundromat. On the morning of March 10, 1998, Rogers went to the laundromat to remove his equipment and other fixtures. Rogers was assisted in this endeavor by plaintiff John Emigh, whom he hired for the task. Sometime after Rogers and Emigh began removing equipment and fixtures, Pelcher dropped by to see how the work was going. It is undisputed that Pelcher did not participate in any of the removal work.

Sometime that morning, City Alderperson Mary Ann Smith was notified by an anonymous constituent that items were being removed from the laundromat. She alerted Amsterdam's Housing Code Inspector, Thomas McQuade, and the Police Department. Thereafter, McQuade, accompanied by Police Officer Todd Stark, arrived at the laundromat to investigate the complaint.

Upon his arrival, Officer Stark found two individuals moving dryers into a van. Stark and McQuade entered the laundromat. Stark observed that copper piping, electrical wires and a water heater had been removed from the building. Stark also saw numerous holes in the walls and ceiling. In addition, McQuade told Stark that during an inspection one week earlier, McQuade had noticed that the property was in good working order.

Stark asked the two men what they were doing. Rogers replied that he was the owner of the laundromat and that he was removing his equipment, with permission from Brumley. He added that he had hired Emigh to help him. Rogers also told Stark that all the business equipment and trade fixtures being removed had been purchased by him and were his property. Rogers informed Stark that Pelcher had not taken any part in the removal of any equipment or fixtures. Sometime during this exchange, Officer Angie Clymer arrived at the laundromat.

Following his conversation with Rogers and a brief discussion with Clymer, Stark

directed the plaintiffs to return all the equipment and fixtures that had been removed from the laundromat. After the plaintiffs put everything back, Stark asked all three plaintiffs to accompany him to the police station for further questioning. The plaintiffs asked if they could drive their own cars to the station, but Stark denied this request and the plaintiffs were driven to the station in police vehicles. Rogers and Pelcher were driven by Stark and Emigh went with Clymer.

At the station, Stark asked the plaintiffs to make additional statements. When they declined, Rogers, Emigh, and Pelcher were charged with Criminal Mischief in the Second Degree and were held at the police station for twelve hours. They were then arraigned in the Amsterdam City Court (based upon the criminal informations filed by Officer Stark) and released on bail. Although the plaintiffs were indicted in March 1998, no further action has been taken by the City of Amsterdam on these charges.

In June 1999, the plaintiffs commenced this action in the United States District Court for the Northern District of New York (Scullin, *J.*) against the City of Amsterdam, Thomas McQuade, and Officer Stark pursuant to 42 U.S.C. § 1983. They alleged false arrest and malicious prosecution in violation of the 4th Amendment. They also asserted a claim for defamation in violation of state law. The defendants moved for summary judgment.

In response to plaintiffs' claims against Officer Stark, the defendants argued that Stark was entitled to qualified immunity on the false arrest and malicious prosecution claims. The district court agreed and granted the defendants' motion. In addition, the district court ruled as a matter of law that the plaintiffs' malicious prosecution claims also failed because the plaintiffs failed to establish that they had

obtained a favorable termination of the underlying criminal mischief charges. The plaintiffs now appeal only their false arrest and malicious prosecution claims against defendant Stark.

## DISCUSSION

We review a district court's grant of summary judgment *de novo*. *Shumway v. United Parcel Serv.*, 118 F.3d 60, 63 (2d Cir.1997). In undertaking a *de novo* review in this case, we examine the evidence in the light most favorable to the plaintiff to determine if there is a genuine issue of material fact requiring trial. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

### A. *Qualified Immunity*

■ "The doctrine of qualified immunity shields police officers acting in their official capacity from suits for damages under 42 U.S.C. § 1983, unless their actions violate clearly-established rights of which an objectively reasonable official would have known." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir.1999).

■ When a plaintiff alleges an arrest without probable cause, an arresting officer may assert the defense of qualified immunity if "either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir.1991). Thus, a police officer who makes a warrantless arrest is entitled to summary judgment on the ground of qualified immunity only "if a jury, viewing all facts in the light most favorable to the plaintiff, could conclude that officers of reasonable competence could disagree on the legality of the defendant's actions." *Cerrone v. Brown*, 246

F.3d 194, 202 (2d Cir.2001) (internal quotation omitted).

■ Probable cause exists "when the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Golino*, 950 F.2d at 870 (citation omitted). The district court ruled that Officer Stark was entitled to qualified immunity from the false arrest and malicious prosecution charges because reasonable officers could disagree as to whether probable cause to arrest the plaintiffs existed and nothing occurred between the arrest and the prosecution to alter this. We agree with the district court's conclusion in regard to plaintiffs Rogers and Emigh but we conclude that summary judgment was not appropriate as to plaintiff Pelcher's claims.

### 1. *Plaintiffs Rogers and Emigh*

■ Upon Officer Stark's arrival at the laundromat, he observed two individuals moving dryers onto a moving van. When he entered the laundromat, Stark found it in a state of disrepair. There were holes in the ceiling and walls of the laundromat and Stark saw that piping, wires and a water heater had been removed from the premises. Stark also consulted Inspector McQuade who told him that the laundromat was in good working order just one week earlier.

Plaintiffs note that Rogers identified himself to Stark as the owner of the business and the equipment and attempted to explain the situation. The plaintiffs argue that this explanation made it impossible for Stark to conclude that plaintiffs had acted with the requisite intent to commit criminal mischief. Thus, their argument runs, officers of reasonable competence could not disagree over whether there was probable cause, and consequently, Stark was not entitled to qualified immunity.

This argument is not persuasive. New York Penal Law § 145.10 provides that:

A person is guilty of criminal mischief in the second degree when with intent to damage property of another person, and having no right to do so nor any reasonable ground to believe that he has such right, he damages property of another person in an amount exceeding one thousand five hundred dollars.

N.Y. Penal Law § 145.10 (McKinney 2002). During his explanation, Rogers admitted that he and Emigh had caused all the damage in question to the laundromat. Although Rogers told Officer Stark that he was entitled to remove his own equipment, Stark was not privy to any earlier discourse between the plaintiffs and city officials. He therefore had no reason to believe that Rogers was entitled to remove the equipment. Further, even if he did believe Rogers, he could have concluded that the resultant damage to the city-owned building was intentional and deliberate. *People v. Misevis*, 155 A.D.2d 729, 547 N.Y.S.2d 439, 440 (3d Dep't 1989) (discussing intent element of Criminal Mischief in the Second Degree).

In sum, given these conditions, officers of reasonable competence could disagree as to whether probable cause existed to arrest Rogers and Emigh. Thus, the district court did not err in concluding that Stark was entitled to qualified immunity as to the claims of Rogers and Emigh.

### 2. *Plaintiff Pelcher*

■ Officer Stark's decision to arrest Pelcher is less understandable. Viewing the facts in the light most favorable to Pelcher, Stark had no information suggesting Pelcher had committed any crime. He did not witness Pelcher removing any items from the laundromat. Further, he was told by Rogers that Pelcher had just

dropped by to see how things were going and he was not helping Rogers and Emigh remove any of the equipment. Rogers' statement that only he and Emigh were removing items from the laundromat reinforced Stark's own observation that two individuals were moving items onto the moving van. The information available to Stark indicated that Pelcher was nothing more than an interested bystander.

On this record, we cannot say that a jury would have to conclude that officers of reasonable competence would disagree on whether the probable cause test was met. Hence, the district court's grant of summary judgment on the basis of qualified immunity on Pelcher's false arrest and malicious prosecution claims was inappropriate.

### B. *Favorable Termination*

■ The district court also ruled that none of the plaintiffs, including Pelcher, could recover on a malicious prosecution claim because they had not obtained a favorable termination of the underlying criminal action.

■ To recover for malicious prosecution, it is the general rule that a plaintiff "must establish that a criminal proceeding was commenced, *that it was terminated in favor of the accused*, that it lacked probable cause, and that the proceeding was brought out of actual malice." *Martinez v. City of Schenectady*, 97 N.Y.2d 78, 84, 735 N.Y.S.2d 868, 761 N.E.2d 560 (2001) (emphasis added). However, under New York law, a dismissal pursuant to New York Criminal Procedure Law § 30.30—New York's speedy trial statute—constitutes a favorable termination. *Smith–Hunter v. Harvey*, 95 N.Y.2d 191, 195–96, 712 N.Y.S.2d 438, 734 N.E.2d 750 (2000).

We have recently stated that an "accused should not be required to relinquish [the right to a speedy trial] in order to vindicate his right to be free from malicious prosecution." *Murphy v. Lynn*, 118 F.3d 938, 949 (2d Cir.1997). Failure to treat a speedy trial dismissal as a favorable termination "would encourage state officials, hoping to shield wrongdoing officers ... from liability, to commence criminal prosecutions against the victims of that wrongdoing and simply hold the criminal charges in abeyance until a court is forced to dismiss the case after six or more months." *Id.* at 951.

The district court's conclusion that the plaintiffs did not obtain a favorable termination of the underlying criminal action is clearly at cross-purposes with the logic of *Murphy* and *Smith–Hunter.* The prosecution has sat on its hands for more than four years; after the initial arraignment of Rogers, Emigh, and Pelcher, no further action has been taken in the underlying criminal case.

The stumbling block here is that the underlying charges against the plaintiffs have never been formally dismissed. Due to a jurisdictional lacuna, the plaintiffs are without a forum to secure an actual dismissal.[1] However, any attempt now by the City of Amsterdam to proceed with criminal action against Pelcher will necessarily result in a dismissal pursuant to New York Criminal Procedure Law

---

1. The felony prosecutions against plaintiffs were commenced by Stark in the local criminal court (Amsterdam City Court) by the filing of a criminal information. That court has no jurisdiction to dispose of a felony complaint. *See* N.Y.C.P.L. §§ 10.30(1), 30.30, 210.20(1)(g). Following plaintiffs' arraignment, the district attorney should have proceeded with the felony charges by obtaining and presenting an indictment to the appropriate superior court (Montgomery County Court). As already noted, the prosecution never moved forward with the case. Because there was never an indictment in the superior court and there is no proceeding pending before that court, there is also no superior court jurisdiction to decide a motion to dismiss plaintiffs' felony complaints. Conse-

§ 30.30. Because of this, we see no relevant distinction between this case and *Smith–Hunter;* due to the City's abandonment of the criminal action, it has been constructively dismissed. Accordingly, we hold that Pelcher has satisfied the favorable termination element of a claim for malicious prosecution.

## CONCLUSION

The judgment of the district court is hereby AFFIRMED with respect to plaintiffs Rogers and Emigh. We REVERSE the grant of summary judgment with respect to plaintiff Pelcher and REMAND to the district court for proceedings not inconsistent with this opinion.

quently, plaintiffs have no forum to obtain a formal dismissal of the underlying criminal action even though such a dismissal is preordained.